432 F.2d 485
 Inez UTZINGER, now Inez Hillis, as Admrx., etc. and in her
own behalf, Libellant-Appellant,
v.
UNITED STATES of America, Respondent-Appellee, v. Inez
UTZINGER, now Inez Hillis, Admrx., etc.,
Cross-Respondent-Appellee.
 No. 19613.
 United States Court of Appeals, Sixth Circuit.
 Sept. 30, 1970.
 
 Walter C. Beall, Cincinnati, Ohio, for libelant-appellant; Hoover, Beall & Eichel, Cincinnati, Ohio, Harry Alan Sherman, Pittsburgh, Pa., on brief.
 Walter H. Fleischer, Atty., Dept. of Justice, Washington, D.C., for respondent-appellee; William D. Ruckelshaus, Asst. Atty. Gen., Morton Hollander, Atty., Dept. of Justice, Leonard Schaitman, Appellate Section, Civil Division, Dept. of Justice, Washington, D.C., William W. Milligan, U.S. Atty., Cincinnati, Ohio, on brief.
 Before PHILLIPS, Chief Judge, and WEICK and McCREE, Circuit Judges.
 WEICK, Circuit Judge.
 
 
 1
 Inez Utzinger, now Inez Hillis, filed a Libel in Admiralty as administratrix of the estate of her husband, Oliver T. Utzinger, and in her own behalf, to recover damages against the United States for his wrongful death and for her own injuries arising out of a motorboat accident occurring in the Cincinnati area of the Ohio River around midnight on August 27, 1963. The United States filed an Answer denying liability and a Cross-Libel against Utzinger's estate alleging that the accident was caused solely by reason of the negligence of the decedent, and prayed in the alternative that if any recovery be decreed in favor of Inez Utzinger then a decree be entered in favor of the government against her as administratrix for the full amount thereof.
 
 
 2
 The case was tried before the Court on a stipulation and oral testimony and exhibits. The District Judge adopted findings of fact and conclusions of law. He found that the sole cause of the collision was the negligence of the decedent and dismissed the Libel and the Cross-Libel. Mrs. Hillis has appealed in her capacity as administratrix and individually. We affirm.
 
 
 3
 The claim for wrongful death requires only brief treatment. The District Judge applied Ohio law which was the state where, in its territorial waters, the accident occurred, where the plaintiff and her husband resided and where plaintiff had been appointed administratrix by the Probate Court of Adams County, Ohio. The state law did not differ from maritime law on the issues of negligence and proximate cause.[1]
 
 
 4
 There was no issue in the District Court or here as to the right of the administratrix to maintain an action for wrongful death in Admiralty.[2] There was no difference between applicable Kentucky law and Ohio law.[3]
 
 
 5
 Appellant did not seriously question the negligence of Utzinger or that it was a cause of the accident in either the District Court or here. In her brief, she states: 'While we despair of now overthrowing Judge Porter's finding that there was some proximate relationship between the operation of the boat and the collision * * *.' Judge Porter's finding was more than that there was some relationship. He found that the negligence was the sole cause of the collision. We affirm his judgment against the estate as his findings of fact were supported by substantial evidence and are not clearly erroneous.
 
 
 6
 The claim of Inez Utzinger, now Inez Hillis, requires more extended discussion. Oliver Utzinger was the owner of an 18-foot vessel with a 75 horsepower outboard motor having a capacity of top speed of about 30 miles an hour. At the time of the accident he was operating his boat on the Ohio river with four passengers aboard including his wife, Inez, on a dark night at a speed of between 21 and 30 miles an hour. A couple of times just before the accident he remarked that he 'couldn't see a damn thing'. He collided with a steel rail of a loading track projecting from the Ohio shore about 5 to 8 feet as a result of which he received injuries which resulted in his death and Mrs. Utzinger was also injured. The loading track was owned by the government.
 
 
 7
 The District Judge made the following findings:
 
 
 8
 '4. On or about June 13, 1961, the United States of America obtained a flowage easement over a parcel of land on the north shore of the Ohio River which had thereon a loading track made up of train rails extending at approximately right angles to the shoreline, and extending to the then existing pool level of the river. Said parcel is variously described, but is the same as that discussed in the pleadings as located at mile 476.2 on the Ohio River. Before the accident date the United States flooded the lower elevations of the parcel in the course of raising the river pool fourteen feet.
 
 
 9
 7. No buoys or other markers, lighted or unlighted were posted in or near the aforesaid rails.
 
 
 10
 14. The accident happened around midnight when the occupants were on their way back to the North Bend Boat Club. From that point they had started out between 6:30 P.M. and 7:00 P.M., and then came east to where they made a gas stop and then proceeded on to a place on the Kentucky side called Bishops. At this point Mr. Utzinger and LaRue stayed down at the dock while the others went up to a bar. Eventually, Utzinger sent LaRue up after them and the return trip west began.
 
 
 11
 16. The boat was equipped with running lights but no spotlight. No lookout was posted.
 
 
 12
 17. The Court finds the River was calm and visibility was poor. Just prior to the crash, Mr. Utzinger said to Mr. Adams: 'I can't see a damn thing.'
 
 
 13
 At that point his speed was between 21 and 30 miles per hour. The boat was planeing and in that posture most of the keel was in the water.
 
 
 14
 18. The speed was excessive under the circumstances, with the boat close to shore. It would have been excessive even further out in the river, the Court finding that for small boats, anything under 20 feet, anything over eight to ten miles an hour was unsafe, especially without a lookout.
 
 
 15
 19. The Court further finds that the speed was not reduced or lowered by Mr. Utzinger even though he could not 'see a damn thing.'
 
 
 16
 20. At the place where the accident happened, the River is approximately a quarter of a mile wide. Whether or not there is a 'bay' at the exact point where the rails entered the water was much disputed. I don't know that it makes too much difference, but the government contended that there was a bay at the point where the rails entered the water, whereas the plaintiffs contended that there was a straight shore line and that Mr. Utzinger was proceeding parellel to it when he hit a submerged rail. The pictures that were taken at the time do not show a bay, but that may be because of the angle from which they were taken. (See LX 2, 5, 11, 12 and 13.) The one taken from off shore (LX 18) soon after the accident (September 2, 1963) does not show a bay. However, the firemen who made the rescue and coastguardsmen who investigated the next day said there was a bay, and, at any rate, the picture taken September 2, 1963 (LX 18) does show the branches overhanging the shore. (LX 2 is appended hereto)
 
 
 17
 21. These overhanging branches figure in the testimony of District Fire Marshal James Ebersole, formerly captain of the Cincinnati Fire Department at Riverside, which made the rescue, and the passenger Buford Adams. This testimony cannot be discounted and is fatal to the plaintiffs' contention that the accident occurred some 20 feet from shore and that at the time plaintiff was proceeding in a course parallel to shore. Ebersole said that when he arrived at the scene he stepped from the bank onto the boat and had to part the branches of an overhanging tree from the windshield of the boat in order to get around to the stern. He was concerned as to whether or not the boat had to be tied up, lest it drift into the river, sink and the occupants drown. He found the boat was firm and did not need to be tied up. This witness and other firemen said that they reached the stern from the bank (not just the shoreline) with a 20-foot ladder by means of which they removed the unconscious occupants of the boat who were passed along the ladder by firemen who were standing knee-deep in water.
 
 
 18
 22. Buford Adams, a passenger, was knocked unconscious by the impact of the boat on one of the rails and all the other occupants were knocked unconscious also. But Adams regained consciousness and in going for help stepped from the bow of the boat to roots of trees.
 
 
 19
 27. It should be noted also that the shoreline of the Ohio River is dangerous. Located some 1500 feet from the point of impact in the direction in which the boat was headed the Tresler Comet fleet barge and pump boat were tied up. Also, the shoreline fluctuated and there were logs, beer cans, etc., along the shore.
 
 
 20
 28. It may also be well to note that the Star Chief was 84 inches wide, weighed 850 to 900 pounds, had a 75 horsepower engine, and, with four people, weighed 1800 pounds, and top speed was 25 to 30 miles per hour.'
 
 
 21
 The Court also found that at the point of impact the rail with which the boat collided was submerged.
 
 
 22
 In his conclusions of law, the Court cited the rules for Western Rivers, 33 U.S.C.A. 301 et seq. and 46 U.S.C.A. 480. He stated:
 
 
 23
 '46 U.S.C.A. 526(1) (526l) provides in part as follows: '(a) No person shall operate any motor boat or any vessel in a reckless or negligent manner so as to endanger life, limb or property of any person." '33 U.S.C.A. 341 provides that: '* * * every steam vessel (defined in section 302 as including any vessel propelled by machinery) shall in * * * any other conditions similarly restricting visibility, whether by day or night, go at a moderate speed."
 
 
 24
 'Since the rail upon which the boat became impaled was probably submerged, though close to shore, there was probably a duty on the part of the United States to mark it properly.
 
 
 25
 I find it unnecessary to make a conclusion as to this because the facts compel the conclusion that the sole cause of the accident was the negligence of the operator in operating close to shore at an excessive speed. This not only precludes recovery by Mr. Utzinger's estate but by Mrs. Hillis as well.'
 
 
 26
 'But we are forced to conclude that Mrs. Hillis' personal injury action must nevertheless fail because we conclude that while the government may have breached its duty to permit structures which interfere with navigation, such failure was a remote cause, and there was no proximate causal connection between the failure and the injuries sustained by Mrs. Utzinger.
 
 
 27
 Hence, we do not reach the question of whether or not the government can compel contribution from the estate of Mr. Utzinger and need not deal with the problem of interspousal immunity which that presents.'On the morning after the accident, it was found that the boat was impaled firmly on a rail one foot from shore and its bow pointed toward shore at a 45 degrees angle. The water was about 18' deep at that place. The rails extended from the bank out into the water a distance of 6 to 8 feet. The rails were visible where they extended from the shore to the water. Between the rails at the bank was a tree with a trunk 6' to 8' in diameter and with branches extending over the water. The foliage around the tree was dense. About one foot from the end of the rail was fresh paint where the boat struck it at a distance of 5 to 6 feet from the tree.
 
 
 28
 Lieutenant Commander Mitchell J. Whiting of the Coast Guard arrived at the scene the morning after the accident and testified as to the position of the boat, the rails, the tree and the foliage. He was asked the following question on cross-examination:
 
 
 29
 'Q. Commander, when you concluded that this boat was going to run into a six to eight-inch tree-- that was a prime conclusion of your investigation.
 
 
 30
 A. One of the conclusions.'
 
 
 31
 It seems to us that there was ample evidence to support the finding of the District Court that the negligence of the decedent was the sole cause of the unfortunate accident. The decedent was operating his boat at about top speed at midnight on a dark night when by his own admission he 'couldn't see a damn thing'. Instead of operating his boat safely in the channel of the river, he was headed toward the shore and hit a rail only 6 to 8 feet away from the river bank where a large tree with overhanging branches, roots and dense foliage was located. The bow of the boat came to a stop just one foot from the river bank. It was inevitable that had he not struck the rail he would have collided with the river bank and tree. Such operation violated the rules provided in 46 U.S.C.A. 526l and 33 U.S.C.A. 341, heretofore quoted.
 
 
 32
 It was the contention of the plaintiff that the government was negligent in failing to remove the rails from the river or at least in not properly marking them, and that it could reasonably have anticipated that harm would result from its failure to do so. This point would have much more force if the unmarked obstruction had been located in the channel of the river. But it may well be doubted that the government could reasonably have anticipated that an operator of a motor boat, who could not see where he was going on a dark night, would blindly propel his boat toward the shore at full speed. Metzger v. Pennsylvania O. & D. Rd. Co., 146 Ohio St. 406, 412, 66 N.E.2d 203 (1946). At most, under Ohio law proximate cause is not a question of law but a factual issue for the jury to determine. Gedeon v. East Ohio Gas Co., 128 Ohio St. 335, 190 N.E. 924 (1934).
 
 
 33
 In an admiralty case, the judgment of a District Court is binding on an Appellate Court unless it is clearly erroneous. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954). In 1966, Rule 81 of the Federal Rules of Civil Procedure was amended so as to make such rules applicable to the findings of a District Court in an admiralty case. Hence, Rule 52(a) applies to the findings of fact adopted by the District Court in the present case.
 
 
 34
 Where a finding of fact is included under the heading of conclusions of law it will be treated as a factual finding. Houck v. Hinds, 215 F.2d 673, 676 (10th Cir. 1954). The labels applied are not controlling. Cf. Cordovan Associates, Inc. v. Dayton Rubber Co., 290 F.2d 858 (6th Cir. 1961).
 
 
 35
 In essence, the District Court found that the alleged negligent conduct of the government was not a substantial factor in producing the harm but was merely a remote one.
 
 
 36
 The conclusions of law adopted by the District Court are in conformity with Ohio as well as Kentucky law.
 
 
 37
 In White v. Ohio Power Co., 171 Ohio St. 148, 168 N.E.2d 314 (1960), the Court in an opinion written by Judge Peck, who is now a member of this court, held:
 
 
 38
 '1. Where in an action arising from a motor vehicle collision there is evidence of negligence on the part of the defendant and of contributory negligence on the part of the plaintiff, which contributory negligence may have continued to the moment of impact, a jury question exists as to whether such negligence of the plaintiff proximately contributed to the collision. Syl. 1. 2. The negligence per se of a driver in double parking his vehicle in violation of a municipal ordinance is not as a matter of law the proximate cause of an accident occasioned when said vehicle is struck by a negligently operated second vehicle.' Syl. 2, Clinger v. Duncan, 166 Ohio St. 216, 141 N.E.2d 156 (1957).
 
 
 39
 In Michael v. United States, 338 F.2d 219 (6th Cir. 1964), this court applied Kentucky law on proximate causation in an action for personal injuries brought under the Federal Tort Claims Act. In that case a mail truck stopped on the northbound portion of the highway to permit the driver to service a mail box located within a few feet of the pavement. The northbound portion of the highway was thereby obstructed. A second automobile following the mail truck came to a complete stop behind the mail truck. A third automobile, following the second one at a high and unlawful rate of speed, hit the second car, caromed and collided headon with an automobile approaching from the opposite direction severely injuring the plaintiff who sued the government.
 
 
 40
 In that case, the government employee was negligent as a matter of law for stopping on the highway in violation of a Kentucky statute but the court held that such negligence was not a proximate cause of the collision. In affirming the judgment of the District Court, Judge O'Sullivan, who wrote the opinion for the court, stated:
 
 
 41
 '* * * However, the issue of whether an act of negligence proximately contributes to a tortious act presents a question of fact. Hines v. Westerfield (Ky., 254 S.W.2d 728), supra; Cook v. Gillespie, 259 Ky. 281, 82 S.W.2d 347 (1935); Prosser, The Law of Torts 282 (2d ed. 1955). The District Judge found as a fact that even if negligent, the mail carrier's conduct was not a proximate cause of the accident. He stated: 'I am of the opinion that the facts in this case show that the intervening act which brought about this accident was the act of the third man by the name of Johnie Brown, who was driving the automobile at a very rapid rate, exceeding the lawful speed limit; that he undertook to stop behind the station wagon and his brakes failed. * * * My opinion is that that is the intervening and superseding act which this man who was driving his mail car could not have anticipated reasonably. * * *.' $4$ The District Judge further analyzed the evidence which in his view supported his factual finding that the mail carrier's conduct was not a proximate cause of the injuries to plaintiffs. In our view, such finding was not clearly erroneous, and therefore will not be set aside. Fed.R.Civ.P. 52(a); Krumholz v. Goff, 315 F.2d 575, 580 (CA 6, 1963); Commissioner (of Internal Revenue) v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).'
 
 
 42
 We conclude that there was substantial evidence to support the findings of fact of the District Court and they are not clearly erroneous. His conclusions of law are correct.
 
 
 43
 Affirmed.
 
 
 44
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 45
 McCREE, Circuit Judge, (dissenting in part).
 
 
 46
 I concur with the majority's affirmance of the dismissal of the wrongful death claim in this case. However, I respectfully dissent from the disposition of the action brought by Mrs. Utzinger for her own injuries.
 
 
 47
 The District Court found that the sole cause of the accident was Mr. Utzinger's negligent operation of the boat. This conclusion represented an acceptance of one of the two conflicting theories presented by the parties. Underlying the Government's theory, which was apparently adopted by the District Court, are the assumptions that the rails were so close to the shore that no boat driver except a negligent one would collide with them; that the Utzinger craft was about to run into the river bank when it collided with the rails; and that Mrs. Utzinger would have suffered equivalent injuries from running aground even if the boat had not been impaled on the rails. Plaintiff's theory, on the other hand, is that the Government's conduct in permitting the rails to protrude into the river was negligent; that the boat was not on a course to collide with the river bank; and that in any case there was no evidence that Mrs. Utzinger's injuries would have been as serious had the rails not been in the water.
 
 
 48
 I believe that the factual conflicts raised by these theories must be fully resolved before judgment can be awarded to either party. Under Ohio law, there can be more than one proximate cause of an injury, Mouse v. Central Sav. & Trust Co., 120 Ohio St. 599, 167 N.E. 868 (1929); Wymer-Harris Constr. Co. v. Glass, 122 Ohio St. 398, 171 N.E. 857 (1930); Moran v. Pittsburgh-Des Moines Steel Co., 166 F.2d 908, 917 (3d Cir. 1948), and accordingly a plaintiff may choose from which of two parties he will attempt to recover. The District Court found that Mr. Utzinger acted negligently (and I see no reason to question this finding), but it expressly refrained from determining whether the Government's conduct in allowing the rails to remain in the river was negligent. The failure to make a finding in this respect is crucial, since in my view Mrs. Utzinger would be entitled to recover her own damages if she could show that she would not have sustained injuries as serious had the Government not been negligent. If she would have suffered the same magnitude of harm in any event, then it would make no difference whether the Government's conduct was negligent, since it could not be said to be a proximate cause of her injuries. Wymer-Harris Constr. Co. v. Glass, supra; Dillon v. Twin States Gas & Elec. Co., 85 N.H. 499, 163 A. 111 (1932); Rest. Torts 2d 432(1).
 
 
 49
 But the District Court expressly refrained from finding whether the boat would have struck the river bank had the rails not been in the river. It did not decide whether the boat was proceeding along or toward the bank, or whether there was a bay or indentation in the bank at a point near the collision.
 
 
 50
 The majority opinion appears to regard the District Court's finding that Mr. Utzinger's negligence was the sole proximate cause of the accident as an implicit finding against appellant on all these disputed issues. But I cannot accept these findings as having been implicitly made in light of the District Judge's explicit refusal to decide these issues. I agree with the majority that there is sufficient evidence in the record to support findings favorable to appellee on these issues, but it is clear that the District Judge expressly made no such findings.
 
 
 51
 In my view of the case, then, it is immaterial whether we call the decisive issue of proximate cause a question of law or question of fact.[1] The District Court
 
 
 52
 here, by reaching a decision on the issue of proximate cause while expressly refraining from making the necessary supporting factual findings, has held, in effect, that Mr. Utzinger's negligence was the sole proximate cause of Mrs. Utzinger's injuries despite the fact that the vessel might not have run aground if the rails had not been permitted to remain in the river, and despite the fact that she might have been merely stunned, as was another passenger, if the boat had struck the river bank instead of the rails. Such a holding, if expressed, would be clearly erroneous, either as a proposition of law or as a finding of fact.
 
 
 53
 Accordingly, I would reverse the judgment of the District Court and remand the case for further proceedings.
 
 
 
 [1]
 Lauritzen v. Larsen, 345 U.S. 571, 583, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941); G. Gilmore & C. Black, Admiralty (1957) 7-11 at page 420, where the author states:
 "Negligence' in general, as well as noncompliance with the (Navigation) Rules, is a ground of liability.
 'Negligence' at sea does not differ, in principle, from 'negligence' ashore.' Cf. Rest. Conflict of Laws (1934) 407, 409, 411; Robinson, on Admiralty, pp. 55, 793, 822.
 
 
 [2]
 The Supreme Court settled the law and upheld such right in Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1773, 26 L.Ed.2d 336, decided June 15, 1970, overruling The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886)
 
 
 [3]
 Plaintiff had claimed that Kentucky law governed
 
 
 [1]
 See C. Wright, Federal Courts, 96, at 431-32 (2d ed. 1970)
 I do not understand Gedeon v. East Ohio Gas Co., 128 Ohio St. 335, 190 N.E. 924 (1934), to hold that under Ohio law proximate cause is a question of fact for purposes of Rule 52(a), Fed.R.Civ.P., which establishes our standard for appellate review. That case holds only that, for the purpose of allocation between trial court and jury of the determination of causation in cases where reasonable men might differ, the question is one for the jury.