**Betty J. URIAN, Appellant,**

v.

**Jack MILSTEAD, Appellee.**

**No. 72–1197.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1972.

Decided Feb. 15, 1973.

DURFEE, Senior Judge.

This is a suit in admiralty in the United States District Court for the Eastern District of Missouri, Eastern Division, for personal injuries sustained by plaintiff, Betty J. Urian on June 13, 1969, while she was a guest on board defendant's cruiser. Plaintiff was injured while attempting to get off the cruiser. The case was tried before the District Judge, who rendered judgment in favor of defendant, D.C., 340 F.Supp. 213, which is hereby affirmed.

The District Court erroneously found that plaintiff had assumed the risk of injury in attempting to disembark from the cruiser as she did. Under Federal maritime law, this finding was error. The doctrine of assumption of risk as a defense does not apply under Federal maritime law in this case. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939); Movible Offshore Co. v. Ousley, 346 F.2d 870, 873 (5th Cir. 1965); King v. Testerman, 214 F.Supp. 335 (D.C.E.D. Tenn., N.D.1963). However, this erroneous holding by the District Court constitutes harmless error, and was not prejudicial because the District Court, on deciding the question of whether plaintiff proved her charge of negligence against defendant, concluded:

> "But the court finds and concludes that plaintiff has failed to establish, by the preponderance of the evidence, that defendant failed in his duty to exercise reasonable care under the circumstances and that such failure caused the accident."

Ramseyer v. General Motors Corp., 417 F.2d 859 (8th Cir. 1969); Lowe v. Taylor Steel Products Co., 373 F.2d 65, 68 (8th Cir. 1967), cert. denied, 389 U.S. 858, 88 S.Ct. 85, 19 L.Ed.2d 122 (1967); Warren v. Ward, 371 F.2d 906, 908 (8th Cir. 1967).

In arriving at this conclusion, and directing a verdict for defendant, the court applied the proper standard of

Joseph H. Mueller, St. Louis, Mo., for appellant.

Henry D. Menghini, St. Louis, Mo., for appellee.

Before GIBSON and LAY, Circuit Judges and DURFEE, Senior Judge of the United States Court of Claims.*

* Senior Judge James E. Durfee of the United States Court of Claims is sitting by designation.

care which is that the owner of the boat owes to all who are lawfully aboard, the duty of exercising ordinary care, which is held to mean reasonable care, under the circumstances of the case. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

However, appellant submits that the District Court erred in finding that defendant was under no duty to advise plaintiff of a "safe" method of leaving the cruiser, and that the duty of exercising ordinary care for plaintiff's safety, under the circumstances that existed at the time of the accident, imposed on defendant the obligation of either informing her of a "safe" way of disembarking, which defendant knew about but failed to mention to plaintiff, or in "beaching" the cruiser in such a manner that plaintiff would not be injured. We conclude that the Trial Court did not err in granting defendant appellee's motion for a directed verdict under the facts, which are as follows:

On June 13, 1969, plaintiff, Betty J. Urian, and her husband were guests on defendant Jack Milstead's cruiser, for an afternoon on the Mississippi River. The cruiser was kept at a marina in the St. Charles, Missouri area. The parties boarded about 2:30 p. m. In addition to plaintiff and her husband, their two children were invited, and the defendant, his wife and their two children were also present. Defendant's cruiser, a Richardson, was approximately 38 feet long, slept six or eight, was equipped with a galley and had a main deck and flying bridge. They cruised about two hours when defendant "beached" the cruiser on an island so that meat for their dinner could be grilled, off the boat.

The boat was beached by bringing it up slowly until light contact was made by the front of the boat with the beach. The boat was equipped with a yachting ladder, which was stored in the bilge. Plaintiff was below deck when the boat was beached. Defendant was familiar with the area and had beached the boat at that particular area many times before the date in question. The beach was approximately 600 yards long and approximately 50 yards deep and made of sand. A bow anchor was placed 20 to 30 yards on the beach and planted by defendant's wife.

Plaintiff assisted in unloading food by standing in the galley and handing things out the forward hatch. She then climbed through the hatch onto the deck. At this time everyone was off the cruiser. Plaintiff did not see anyone get off. Plaintiff understood that once the barbecuing of the meat had been completed on shore, the party would return to the cruiser for the meal, and there was no particular reason for her to leave the cruiser, except to be part of the group.

After plaintiff climbed to the forward deck, defendant offered to help her off the cruiser. He directed her to go to the outside of the bow rail. There was no ladder present. Plaintiff's husband then said: "Don't get off the boat." Plaintiff and defendant both heard this instruction, which plaintiff did not question. Plaintiff's husband was standing by the barbecue grill some eight to ten feet in front of the cruiser. Plaintiff said she would wait, and then sat down on the forward deck. Defendant who had been standing near the boat, turned and walked away to busy himself with the barbecuing. Sometime later plaintiff decided to get off the cruiser as everyone else was on the beach. Plaintiff did not ask defendant or anyone else for assistance at this time. She attempted to come around the outside of the bow rail and lower herself to the beach. She intended to lower herself to the edge of the deck and lower her body to a hanging position and then drop to the ground. The distance from the deck to the beach was at least six to ten feet.

Defendant was not aware that plaintiff was attempting to get off the boat at the time of her injury. Plaintiff did not inform defendant or anyone else that she was getting off the cruiser. At the time plaintiff attempted to get off the cruiser, defendant and plaintiff's

husband were standing approximately six to ten feet from the cruiser. There was nothing which prevented plaintiff from getting the attention of defendant at that time. To plaintiff's knowledge, no one saw her attempting to get off the cruiser. After Mr. Urian's instruction to plaintiff to remain on board the cruiser, Mr. Urian thought she was going to stay aboard the cruiser.

While plaintiff was standing outside the bow rail, to lower herself to the deck, her right hand slipped off the rail and she fell to the beach, landing in a sitting position. Plaintiff testified that she saw nothing that appeared "dangerous" or "hazardous" to her. She had never been on defendant's boat before, nor did she and her husband own a boat. Furthermore, she had no familiarity with cruisers.

Defendant testified the rear of the boat could have been pulled around so it would be parallel with the beach and then the yachting ladder could have been used off the stern with about a three-foot descent to the beach. This could have been accomplished so that plaintiff would not have gotten her feet wet.

Defendant selected the site and was in charge of the boat. The side of the boat could have been brought up alongside the beach simply by changing the anchors. Defendant said nothing to plaintiff or anyone else about bringing the boat parallel with the beach so plaintiff could disembark off the rear side.

The bow rail was 2–2½ feet above the deck. According to defendant, the method used of getting off the boat by plaintiff was safer than jumping off the front. He further stated, getting off the boat by use of the rear ladder would be the safest way to disembark.

The trial court concluded that:

It is undisputed that defendant owed to plaintiff as a person lawfully aboard the vessel the duty of exercising ordinary care, which is held to mean reasonable care under the circumstances of each case. Kermarec v. Compagnie Generale Transatlantique,

358 U.S. 625 [79 S.Ct. 406, 3 L.Ed.2d 550] (1959). Under the facts in this case, it was not reasonably foreseeable that plaintiff would undertake to disembark without first advising defendant, her husband or others in the cruise party of her intentions. Plaintiff's husband had intervened at the time defendant offered assistance to the plaintiff and had instructed plaintiff to remain on board. Plaintiff, in the clearest possible terms had said that she "would wait." In circumstances where parties are boarding or debarking from a vessel and such activity may be reasonably anticipated, the defendant has a clear duty to provide a safe means of ingress and egress. Defendant would have been under no duty to provide such means of ingress and egress had the boat been underway in the middle of the Mississippi; and in the court's opinion, defendant had no such duty under the circumstances hereinabove described, where the cruise party was expected to return to the boat within a short time and where plaintiff's husband had indicated his desire that plaintiff remain on board and plaintiff had indicated in the clearest terms her acquiescence and intention to do so. Defendant was under no duty to advise the plaintiff of the alternative method of leaving by the stern after the stern had been brought into the beach, since it was not reasonably foreseeable that she intended to leave the boat at all.

The District Court's findings that under the facts in this case, it was not reasonably foreseeable that plaintiff would undertake to disembark without first advising defendant, her husband, or others in the party, of her intention to do so, and its further finding that plaintiff did not establish that defendant failed in his duty to exercise reasonable care under the circumstances, were not clearly erroneous, and were factually and legally supported by the evidence and the law of the case. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); Cleo

Syrup Corp. v. Coca-Cola Co., 139 F.2d 416, 418 (8th Cir. 1943); Jackson v. Hartford Accident & Indemnity Co., 422 F.2d 1272, 1275 (8th Cir. 1970), cert. denied, 400 U.S. 855, 91 S.Ct. 86, 27 L.Ed.2d 92 (1970); The Vulcania, 8 F. Supp. 300, 302 (D.C.Mass., 1934).

The incidental finding of assumption of risk was harmless error, although the Trial Court did conclude therein the conclusion that plaintiff was not negligent. However, since the court correctly concluded that plaintiff failed to establish that defendant was negligent, we need not discuss the question as to whether or not plaintiff was negligent.

The judgment of the District Court for defendant is affirmed.