**Eva M. GEMP, Individually and as Administratrix W/W/A of The Estate of James E. Gemp; Daniel C. Strawhecker and Sandra R. Sheridan, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 81–3288.

United States Court of Appeals, Sixth Circuit.

Argued May 3, 1982.

Decided Aug. 4, 1982.

Rehearing Denied Dec. 1, 1982.

Ingolf R. Dinklage, Covington, Ky., for plaintiffs-appellants.

Donetta D. Wiethe, Asst. U. S. Atty., Cincinnati, Ohio, David V. Hutchinson, De-bra J. Kossow, Torts Branch, Civ. Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before LIVELY, MERRITT, and TIM-BERS,* Circuit Judges.

TIMBERS, Circuit Judge.

This appeal in this admiralty action[1] arises from a saga on the Ohio River some four years ago. Two fishermen in a small boat tied up at a dam, hoping to fish in the oxygen-laden water rushing under one of the discharge gates at the dam. Under circumstances described below, one of the fishermen was drowned. The other sustained personal injuries. An action was commenced by the administratrix of the deceased fisherman and by the surviving fisherman to recover damages as the result of the alleged negligence of the Army Corps of Engineers. After a bench trial in the Southern District of Ohio, Carl B. Rubin, District Judge, dismissed the complaint on the ground that defendant was free from negligence. We affirm.

I.

The Captain Anthony Meldahl Dam ("Meldahl Dam") is a navigational dam on the Ohio River. It extends across the river from Clermont County, Ohio, to Bracken County, Kentucky. It is operated and maintained by the United States Army

---

* Of the Second Circuit, by designation.

1. The jurisdictional underpinning for this action is provided in 28 U.S.C. § 1333(1) (1976).

See *Foremost Insurance Co. v. Richardson,* —— U.S. ——, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982).

Corps of Engineers ("defendant" or "Corps"). Meldahl Dam has twelve discharge gates, any or all of which may be opened to permit water to pass in order to regulate the height of the river. When viewed from the downstream side of the dam, the gates are numbered consecutively 1 to 12 from left to right.

When a gate is open, water flows over the dam into a corresponding "stilling bay", which is equipped with baffling blocks to reduce the velocity of the water before it enters the downstream pool of the river. The twelve bays are separated from each other by piers, each of which is approximately 100 feet in length. At the end of each pier are two rings placed there for the Corps to use to tie up tender boats while the Corps is doing repair work at the dam. Despite the presence of the baffling blocks, the water passing through an open gate at high velocity into the stilling bay creates a phenomenon called "hydraulic jump". This causes turbulence, spray, foam, white water, and a vortex near the face of the dam. The water level in the bay may be several feet higher than the surrounding water. Thus, an upstream current—toward the turbulence and the dam—is created. Fishermen nevertheless frequent the waters below the Meldahl Dam because the highly oxygenated turbulent water attracts fish.

On June 24, 1978, James E. Gemp and Daniel C. Strawhecker approached Meldahl Dam in Strawhecker's eighteen-foot, fiberglass, inboard-outboard boat. They intended to fish. Both Strawhecker and Gemp had fished at the dam several times before—Strawhecker approximately ten times, Gemp three or four times. That morning gates 4, 6, 8, 9, and 10 were open three feet; gate 3 was open two feet. Strawhecker and Gemp found acquaintances fishing off the first and second piers. Because of "courtesy among fishermen" not to fish in each other's area, Strawhecker and Gemp tied up at the third pier—the one between gates 2 and 3. They secured a bow

line to one of the rings at the end of the pier and dropped a stern anchor. The water below gate 2 was calm; that below gate 3 was turbulent.

Before starting to fish, Strawhecker noticed that his stern anchor line was floating. Before he could resecure it, the stern of the boat drifted into the third bay. The boat struck the right side of the pier to which it previously had been secured and sank.[2] Gemp was drowned. Strawhecker sustained personal injuries and property loss.

Strawhecker and Eva M. Gemp, administratrix of the estate of James E. Gemp, commenced an action in the Southern District of Ohio on October 11, 1979. They sought damages under the Suits in Admiralty Act, 46 U.S.C. §§ 741–752 (1976), claiming that the Corps of Engineers had been negligent in failing to warn fishermen of the dangerous conditions below the dam. The case was tried to the court on February 3 and 4, 1981.

In an opinion filed February 17, 1981, which contained detailed findings of fact and conclusions of law, the court ordered that judgment be entered in favor of defendant and that the complaint be dismissed. The court found that the turbulent waters below the dam were an open and obvious danger, that defendant gave sufficient warning to the public of the danger below the dam, and that the means of disseminating the information was reasonable. The court also found that plaintiffs voluntarily had assumed the risk of injury in an obviously dangerous area.

On March 2, 1981, plaintiffs moved to amend or make additional findings and to alter or amend the judgment. The motion was denied. Plaintiffs appealed. We affirm.

## II.

The district court held that defendant was not liable because the hazards cre-

2. It is not clear from the record whether the boat sank as the result of breaking up when it struck the pier or as the result of swamping when it encountered the hydraulic jump and turbulence below gate 3. For the purposes of ruling on the issues raised on this appeal, we find immaterial which was the cause of the boat's sinking.

ated by the open gate 3 were "obvious to any person who ventured near the Meldahl Dam." Thus there was no duty on defendant's part to warn plaintiffs of the danger. When there is no duty, there can be no breach of duty and hence no negligence. We agree with the district court that there was no duty on defendant's part to warn.

■ Appellants do not seriously dispute the court's finding that the turbulence of the water in bay number 3 was open and obvious. They argue, however, that Gemp and Strawhecker were a safe distance away from the obviously dangerous turbulence but not beyond range of the upstream current. This, they assert, was a hidden danger and the immediate cause of the accident. There was testimony, however, from several witnesses, including Partack and Underwood, whose boats were tied up at piers one and two respectively, that the current in fact was obvious and open. We may not reverse a district court's findings of fact in an admiralty action unless they are clearly erroneous. *Utzinger v. United States*, 432 F.2d 485, 489 (6 Cir. 1970). Here, the district court's finding that the dangers which caused the accident were open and obvious is amply supported by the record. Moreover, Strawhecker's use of a stern anchor indicates that he in fact was aware of the danger presented by the current.

Appellants rely upon *Dye v. United States*, 210 F.2d 123 (6 Cir. 1954), in support of their contention that the factual situation presented in the instant case did not constitute an open and obvious danger. In *Dye*, a boater was carried over a dam by the current created when one of the dam wickets was opened. In that case, however, the danger was significantly more dis-

guised, since the plaintiff was coming from upstream of the dam and had no way of knowing that the wicket was open until after he was already in danger of being swept over the dam. In the instant case, by contrast, the turbulence and current were patent harbingers of danger.

Appellants further argue that, despite the obviousness of the danger, defendant nevertheless had a duty to warn. The district court rejected this argument, relying upon Restatement (Second) of Torts § 343A (1965), which deals with the liability of a possessor of land for injury resulting from known and obvious dangers.[3] Appellants, citing *Santos v. Scindia Steam Navigation Co.*, 598 F.2d 480, 486 & n.5 (9 Cir. 1979), *aff'd on other grounds*, 451 U.S. 156 (1981), urge that this rule does not apply to admiralty actions. *Santos*, however, was decided under § 5(b) of the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"); 33 U.S.C. § 905(b) (1976). The LHWCA, as indicated by the district court below, applies to limited situations involving relationships in the nature of those between employees and employers. It provides specific remedies and is based upon specific policy considerations which are not always applicable to admiralty and maritime actions brought under the Suits in Admiralty Act. The Supreme Court, moreover, declined to adopt the Ninth Circuit's rejection of the Restatement standard. *Santos, supra*, 451 U.S. at 168 & n.14. The Court suggested that §§ 343 and 343A of the Restatement, "while not irrelevant, do not furnish sure guidance in cases" under § 5(b) of the LWHCA. *Id.* n.14. Under the circumstances of this case, however, we find that § 343A does provide useful guidance and was properly applied by the district court to this action brought under the Suits in Ad-

---

**3.** Restatement (Second) of Torts § 343A (1965) provides:

"§ 343A. Known or Obvious Dangers
(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated."

miralty Act.[4] We hold, therefore, that defendant had no duty under general principles of the law of negligence to warn Strawhecker and Gemp of the open and obviously dangerous condition below Meldahl Dam.

■ Appellants also argue that defendant was under a statutory duty to keep boaters from the area immediately below the Meldahl Dam. They rely upon 33 C.F.R. § 207.300(s) which provides:

"(s) *Restricted areas at locks and dams.* All waters immediately above and below each dam, *as posted by the respective District Engineers*, are hereby designated as restricted areas. No vessel or other floating craft shall enter any such restricted area at any time. The limits of the restricted areas at each dam will be determined by the responsible District Engineer and market [sic] by signs and/or flashing red lights installed in conspicuous and appropriate places." (emphasis added).

The area below the Meldahl Dam was not posted by the District Engineers. Defendant claims that this was discretionary with the District Engineers. Although once an area around a dam has been designated as a restricted area, warnings must be posted, we hold that the initial decision whether to post is discretionary with the District Engineers and is not subject to review under the Suits in Admiralty Act. *See Bearce v. United States,* 614 F.2d 556, 559–61 (7 Cir.), *cert. denied,* 449 U.S. 837 (1980); *Gercey v. United States,* 540 F.2d 536, 538–39 (1 Cir.), *cert. denied,* 430 U.S. 954 (1977). Since the regulation allows the District Engineers to determine the *limits* of any restricted areas, it follows that it is within their discretion not to designate *any* restricted areas for purposes of applying this regulation. Indeed, the Corps did designate an area 2000 feet below and 1400 feet above the Meldahl Dam as a danger zone which was so marked on naviga-

tional charts. We hold that the Corps correctly interpreted the regulation to mean that additional restrictions were discretionary.

For the reasons stated above, we agree with the district court's conclusion that defendant was not negligent because it did not owe appellants any duty to warn of the open and obvious danger.

### III.

Appellants raise several other issues, with which we deal briefly.

■ First, they argue that defendant's warnings were insufficient. Our holding above that defendant had no duty to warn, and hence was not negligent in failing to do so, is sufficient to dispose of this issue. If we were to reach the issue of the sufficiency of the warnings, however, we would hold that defendant's warnings were sufficient. Defendant printed and distributed copies of a safety bulletin. Moreover, danger zones above and below Meldahl Dam were designated on navigational charts made available to and commonly used by the boating public. At trial, Strawhecker admitted that, if he had looked at river charts for the Meldahl Dam area, he would have inquired about the danger zone. Strawhecker and Gemp, as pleasure craft operators, are charged as a matter of law with knowledge of information shown on such charts. *Jacobs v. United States,* 1979 A.M.C. 660, 667 (E.D.Ky.). Under the circumstances, defendant's warnings were reasonable.

■ Appellants also challenge certain language in the district court's opinion which implies that, apart from the absence of a duty to warn, appellants' claims are barred by the doctrine of assumption of risk. We agree that this doctrine is not a total bar in admiralty actions. *E.g., Socony-Vacuum Oil Co. v. Smith,* 305 U.S. 424, 431 (1939) ("Any rule of assumption of risk in admiralty, whatever its scope, must be appli-

---

4. Appellants cite *Doty v. United States,* 531 F.Supp. 1024 (N.D.Ill.1982), for the proposition that Restatement § 343A does not apply in actions brought under the Suits in Admiralty Act. Aside from the fact that that decision of course is not controlling on this Court, we note

further that *Doty* does not discuss § 343A at all. There is no indication that the issue was ever raised or considered. We do not find that the general standard enunciated in *Doty,* 531 F.Supp. at 1034–35 & n. 10, necessarily is inconsistent with the Restatement standard.

ed in conjunction with the established admiralty doctrine of comparative negligence and in harmony with it. Under that doctrine contributory negligence, however gross, is not a bar to recovery, but only mitigates damages."); *Urian v. Milstead,* 473 F.2d 948, 949 (8 Cir. 1973) ("The doctrine of assumption of risk as a defense does not apply under Federal maritime law in this case."). In view of our holding above that defendant was free from negligence, however, the applicability of such defenses as assumption of risk and contributory negligence here is moot.

For the same reason, we need not consider another issue raised by appellants, namely, whether Strawhecker's negligence may be imputed to Gemp.

We have carefully considered all claims of error raised by appellants and have concluded that the judgment of the district court in favor of defendant dismissing the complaint should be affirmed.

Affirmed.

MERRITT, Circuit Judge, dissenting.

The Court holds that because the turbulence of the water near the Meldahl Dam gates was obvious, the United States Army Corps of Engineers had no duty to warn invitees of dangers inherent in the turbulent conditions. Even assuming that the strong under-tow and unusual "roll back" current caused by the underwater baffle blocks can be considered an "obvious" danger,[1] an assumption I do not share, the very authorities relied upon by the District Court and our Court compel the conclusion that the United States had a duty to warn notwithstanding the obviousness of the danger.

If a possessor of land can or should anticipate that a condition on his land will cause physical harm to invitees notwithstanding its known or obvious danger, then he may be held liable for injuries caused by the condition and may have a duty to warn. Indeed, the Restatement of Torts 2d, which the majority finds persuasive, specifies that possessors will be absolved of liability to invitees for injuries from obviously dangerous conditions "*unless* the possessor should anticipate the harm despite such obviousness." Restatement Torts 2d, § 343A. The Restatement further indicates that a public utility or governmental agency which holds its lands open to the public and which may have special reason to anticipate that invitees will proceed to encounter obvious dangers will be under a greater duty of care than other possessors of land. See § 343A(2) and comment (a).

The Corps of Engineers was fully aware that the waters near the Meldahl Dam were popular among pleasure boaters and fishermen. It was also aware that many boaters seeking to fish in the area would be inexperienced and unknowledgeable about the dangers of approaching a dam. Indeed, a similar fatal accident involving pleasure boaters fishing near the gates of the dam had occurred in the recent past. The Corps has published several pamphlets and charts warning boaters of the dangers of dams, but was aware that many boaters may not obtain these documents before venturing towards the dam. Uncontroverted testimony indicates that a boater would either have to be experienced enough to "read" the water near the dam correctly or that one would at least have to be "looking out" specifically for the direction of the currents to have known the actual gravity of the danger. Reasonable men observing numbers of fishermen at the dam and reading newspaper accounts of the excellent fishing available there could reasonably conclude that the benefits of fishing in the areas held open to them outweighed the risks presented by the apparently turbulent waters.

With full knowledge of the extreme dangers of the dam waters and the popularity of the waters among inexperienced fisher-

---

1. Plaintiff Strawhecker's uncontroverted testimony indicates that the boat sank almost immediately after it broke loose from the pier (App. at 164–65); this suggests that the cause of the accident was not the apparent turbulence but rather the hidden under-tow and "roll back" current caused by underwater baffle blocks. Since these dangers were not "obvious" to inexperienced boatmen who were likely to use the area, the Corps would be under a duty to warn invitees on the specific danger present.

men, the Corps nonetheless exercised its discretion and held the area open for public recreation rather than declaring it a "restricted area." This decision to hold open the Meldahl Dam waters to fishermen placed the Corps under a duty of reasonable care towards invitees, which at a minimum, would require adequate warnings regarding the dangers the Corps knew the invitees would proceed to encounter. See Restatement of Torts 2d, § 343A, comment (g). Despite the "obviousness" of the danger, the Corps had "reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Id.* at comment (f).

Where the probability and gravity of harm is so great, the mere "obviousness" of the danger does not absolve a possessor of the duty to warn, especially since on-site warnings could have been installed without undue effort or expense. Under these circumstances, it is quite clear that the Corps has a duty to warn, and that the distribution of pamphlets and charts noting these dangers was not "adequate warning."