## KERMAREC *v.* COMPAGNIE GENERALE TRANSATLANTIQUE.

No. 22.   Argued November 13, 1958.—Decided February 24, 1959.

*Edward J. Malament* argued the cause for petitioner. With him on the brief was *Malcolm B. Rosow.*

*George A. Garvey* argued the cause and filed a brief for respondent.

MR. JUSTICE STEWART delivered the opinion of the Court.

On November 24, 1948, the respondent's vessel, the S. S. *Oregon,* was berthed at a pier in the North River, New York City. About noon on that day Joseph Kermarec came aboard to visit Henry Yves, a member of the ship's crew. The purpose of the visit was entirely personal, to pay a social call upon Yves and to give him a package to be delivered to a mutual friend in France. In accordance with customary practice permitting crew members to entertain guests aboard the vessel, Yves had obtained a pass from the executive officer authorizing Kermarec to come aboard.[1] As he started to leave the ship several hours later, Kermarec fell and was injured while descending a stairway.

On the theory that his fall had been caused by the defective manner in which a canvas runner had been

---

[1] The pass contained the following language: "The person accepting this pass in consideration thereof assumes all risks of accidents, and expressly agrees that the Compagnie Generale Transatlantique shall not be held liable under any circumstances whether by negligence of their employees, or otherwise, for any injury to his person or for any loss or injury to his property." The district judge instructed the jury that this attempted disclaimer could have no effect unless it had been made known to Kermarec. The evidence showed that Kermarec had not seen the pass. By its verdict the jury implicitly found that Kermarec had not been informed of the language appearing on it. Since that finding is not disputed here, we need not consider what effect the attempted disclaimer would have had if Kermarec had been aware of it. See *Moore* v. *American Scantic Line, Inc.,* 121 F. 2d 767. Compare 46 U. S. C. § 183c.

tacked to the stairway, Kermarec brought an action for personal injuries in the District Court for the Southern District of New York, alleging unseaworthiness of the vessel and negligence on the part of its crew. Federal jurisdiction was invoked by reason of the diverse citizenship of the parties, and a jury trial was demanded.

The district judge was of the view that the substantive law of New York was applicable. Accordingly, he eliminated the unseaworthiness claim from the case and instructed the jury that Kermarec was "a gratuitous licensee" who could recover only if the defendant had failed to warn him of a dangerous condition within its actual knowledge, and only if Kermarec himself had been entirely free of contributory negligence.[2]

The jury returned a verdict in Kermarec's favor. Subsequently the trial court granted a motion to set the verdict aside and dismiss the complaint, ruling that there

---

[2] "With respect to the first issue of fact, namely, the alleged negligence of the defendant, you must bear in mind that the owner of a ship such as the defendant is subject to liability for bodily harm caused to a gratuitous licensee, such as the plaintiff, by any artificial condition on board the ship, only if both of the following conditions are present: (1) if the defendant knows of the unsafe condition and realizes that it involves an unreasonable risk to the plaintiff and has reason to believe that the plaintiff will not discover the condition or realize the risk; and (2) if the defendant invites or permits the plaintiff to enter or remain upon the ship without exercising reasonable care either to make the condition reasonably safe or to warn the plaintiff of the condition and risk involved therein.

"In short, in order that the plaintiff recover in this case, he must establish by a fair preponderance of the evidence that the defendant knew of the unsafe condition and invited the plaintiff aboard without either correcting the condition or warning him of it.

.        .        .        .        .

"In connection with damages, if you find that the plaintiff's injuries were the proximate result of the defendant's negligence and the plaintiff's own contributory negligence, even in the slightest degree, then the plaintiff cannot recover at all."

had been a complete failure of proof that the shipowner had actually known that the stairway was in a dangerous or defective condition. A divided Court of Appeals affirmed. The opinion of that court does not make clear whether affirmance was based upon agreement with the trial judge that New York law was applicable, or upon a determination that the controlling legal principles would in any event be no different under maritime law. 245 F. 2d 175. Certiorari was granted to examine both of these issues. 355 U. S. 902.

The District Court was in error in ruling that the governing law in this case was that of the State of New York. Kermarec was injured aboard a ship upon navigable waters. It was there that the conduct of which he complained occurred. The legal rights and liabilities arising from that conduct were therefore within the full reach of the admiralty jurisdiction and measurable by the standards of maritime law. See *The Plymouth*, 3 Wall. 20; *Philadelphia, W. & B. R. Co.* v. *Philadelphia & Havre de Grace Steam Tugboat Co.*, 23 How. 209, 215; *The Commerce*, 1 Black 574, 579; *The Rock Island Bridge*, 6 Wall. 213, 215; *The Belfast*, 7 Wall. 624, 640; *Leathers* v. *Blessing*, 105 U. S. 626, 630; *The Admiral Peoples*, 295 U. S. 649, 651. If this action had been brought in a state court, reference to admiralty law would have been necessary to determine the rights and liabilities of the parties. *Carlisle Packing Co.* v. *Sandanger*, 259 U. S. 255, 259. Where the plaintiff exercises the right conferred by diversity of citizenship to choose a federal forum, the result is no different, even though he exercises the further right to a jury trial. Whatever doubt may once have existed on that score was effectively laid to rest by *Pope & Talbot, Inc.,* v. *Hawn*, 346 U. S. 406, 410–411. It thus becomes necessary to consider whether prejudice resulted from the court's application of the substantive law of New York.

In instructing the jury that contributory negligence on Kermarec's part would operate as a complete bar to recovery, the district judge was clearly in error. The jury should have been told instead that Kermarec's contributory negligence was to be considered only in mitigation of damages. *The Max Morris,* 137 U. S. 1; *Pope & Talbot, Inc.,* v. *Hawn,* 346 U. S. 406, 408–409. It is equally clear, however, that this error did not prejudice Kermarec. By returning a verdict in his favor, the jury necessarily found that Kermarec had not in fact been guilty of contributory negligence "even in the slightest degree."

The district judge refused to submit the issue of unseaworthiness to the jury for the reason that an action for unseaworthiness is unknown to the common law of New York. Although the basis for its action was inappropriate, the court was correct in eliminating the unseaworthiness claim from this case. Kermarec was not a member of the ship's company, nor of that broadened class of workmen to whom the admiralty law has latterly extended the absolute right to a seaworthy ship. See *Mahnich* v. *Southern S. S. Co.,* 321 U. S. 96; *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85; *Pope & Talbot, Inc.,* v. *Hawn,* 346 U. S. 406. Kermarec was aboard not to perform ship's work, but simply to visit a friend.

It is apparent, therefore, that prejudicial error occurred in this case only if the maritime law imposed upon the shipowner a standard of care higher than the duty which the district judge found owing to a gratuitous licensee under the law of New York. If, in other words, the shipowner owed Kermarec the duty of exercising ordinary care, then upon this record Kermarec was entitled to judgment, the jury having resolved the factual issues in his favor under instructions less favorable to him than should

have been given.[3]   Stated broadly, the decisive issue is thus whether admiralty recognizes the same distinctions between an invitee and a licensee as does the common law.

It is a settled principle of maritime law that a ship-owner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.   *Leathers* v. *Blessing,* 105 U. S. 626; *The Max Morris,* 137 U. S. 1; *The Admiral Peoples,* 295 U. S. 649.[4] But this Court has never determined whether a different and lower standard of care is demanded if the ship's visitor is a person to whom the label "licensee" can be attached.   The issue must be decided in the performance of the Court's function in declaring the general maritime law, free from inappropriate common-law concepts.   *The Lottawanna,* 21 Wall. 558; *The Max Morris,* 137 U. S. 1.[5]

The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism.   In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each.[6]   Yet even

---

[3] The record clearly justifies a finding that the canvas runner was defectively tacked to the stairway, and that this caused a dangerous condition of which the shipowner's agent would have known in the exercise of ordinary care.   By its verdict, the jury found that much and more.

[4] Cf. *The Osceola,* 189 U. S. 158.

[5] Where there is no impingement upon legislative policy.   Cf. *United States* v. *Atlantic Mut. Ins. Co.,* 343 U. S. 236; *Halcyon Lines* v. *Haenn Ship Corp.,* 342 U. S. 282.

[6] Random selection of almost any modern decision will serve to illustrate the point.   *E. g., Chicago G. W. R. Co.* v. *Beecher,* 150

within a single jurisdiction, the classifications and sub-classifications bred by the common law have produced confusion and conflict.[7] As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, un-evenly and with hesitation, towards "imposing on owners and occupiers a single duty of reasonable care in all the circumstances." [8]

For the admiralty law at this late date to import such conceptual distinctions would be foreign to its traditions of simplicity and practicality. *The Lottawanna*, 21 Wall. 558, at 575. The incorporation of such concepts appears particularly unwarranted when it is remembered that they originated under a legal system in which status depended almost entirely upon the nature of the indi-vidual's estate with respect to real property, a legal system

F. 2d 394 (licensee by express invitation; licensee by implied invita-tion; bare licensee).

[7] For example, the duty of an occupier toward a licensee under the law of New York, which the District Court thought applicable in the present case, appears far from clear. Compare *Fox* v. *Warner-Quinlan Asphalt Co.*, 204 N. Y. 240, 245, 97 N. E. 497, 498; *Mendelo-witz* v. *Neisner*, 258 N. Y. 181, 184, 179 N. E. 378, 379; *Paquet* v. *Barker*, 250 App. Div. 771, 293 N. Y. S. 983 (2d Dept.); *Byrne* v. *New York C. & H. R. R. Co.*, 104 N. Y. 362, 10 N. E. 539; *Higgins* v. *Mason*, 255 N. Y. 104, 109, 174 N. E. 77, 79; *Ehret* v. *Village of Scarsdale*, 269 N. Y. 198, 208, 199 N. E. 56, 60; *Mayer* v. *Temple Properties*, 307 N. Y. 559, 563–564, 122 N. E. 2d 909, 911–913; *Friedman* v. *Berkowitz*, 206 Misc. 889, 136 N. Y. S. 2d 81.

[8] See Chief Judge Clark's dissenting opinion in the Court of Appeals. 245 F. 2d 175, at 180. A survey here of the thousands of judicial decisions in this area during the last hundred years is as unnecessary as it would be impossible. A recent critical review is to be found in 2 Harper and James, The Law of Torts, c. xxvii, *passim* (1956). See also, Prosser, Business Visitors and Invitees, 26 Minn. L. Rev. 573; Marsh, The History and Comparative Law of Invitees, Licensees and Trespassers, 69 L. Q. Rev. 182, 359.

in that respect entirely alien to the law of the sea.[9]   We hold that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case.[10]   It follows that in the present case the judgment must be vacated and the case remanded to the District Court with instructions to reinstate the jury verdict and enter judgment accordingly.

*It is so ordered.*

---

[9] This is not to say that concepts of status are not relevant in the law of maritime torts, but only that the meaningful categories are quite different.   Membership in the ship's company, for example, a status that confers an absolute right to a seaworthy ship, is peculiar to the law of the sea.   Such status has now been extended to others aboard "doing a seaman's work and incurring a seaman's hazards." *Seas Shipping Co.* v. *Sieracki*, 328 U. S. 85, at 99.

[10] The inconsistent and diverse results reached by courts which have tried to apply to the facts of shipboard life common-law distinctions between licensees and invitees reinforce the conclusion here reached. As to a seaman crossing another vessel to reach the pier, see *Radoslovich* v. *Navigazione Libera Triestina, S. A.*, 72 F. 2d 367 (invitee) ; *Aho* v. *Jacobsen*, 249 F. 2d 309 (licensee) ; *Anderson* v. *The E. B. Ward, Jr.*, 38 F. 44 (invitee) ; *Griffiths* v. *Seaboard Midland Petroleum Corp.*, D. C. Md., 1933 A. M. C. 911 (invitee) ; see also *Lauchert* v. *American S. S. Co.*, 65 F. Supp. 703 (licensee). As to a guest of a passenger, see *McCann* v. *Anchor Line*, 79 F. 2d 338 (invitee) ; *Zaia* v. *"Italia" Societa Anonyma di Navigazione*, 324 Mass. 547, 87 N. E. 2d 183 (licensee) ; *The Champlain*, N. Y. Sup. Ct., 1934 A. M. C. 25 (invitee).   See also *Metcalfe* v. *Cunard S. S. Co.*, 147 Mass. 66, 16 N. E. 701 (licensee).

The English courts appear to have differentiated between an invitee and a licensee in cases of personal injury on shipboard, without critical inquiry.   See, *e. g.*, *Smith* v. *Steele*, L. R. 10 Q. B. 125 (1875) and *Duncan* v. *Cammell Laird & Co., Ltd.*, [1943] 2 All E. R. 621. These distinctions have after thorough study (Law Reform Committee, Third Report, Cmd. No. 9305 (1954)) been eliminated entirely from the English law by statutory enactment.   Occupiers' Liability Act, 1957, 5 and 6 Eliz. 2, c. 31.