Julius BROWN, Libelant,

v.

Lambert DUNCAN and Eugene D'Armas, individually and as co-owners of THE Tug DEIBERVILLE or Tug D'Iberville, the Tug Deiberville or Tug D'Iberville, and Fireman's Fund Insurance Company, Respondents.

No. 4338.

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 30, 1961.

Samuel C. Gainsburgh, New Orleans, La., Lionel R. Collins, Gretna, La., for libelant.

Dufour, St. Paul, Levy & Marx, Leonard B. Levy, New Orleans, La., for Employers Cas. Co., Intervenor.

Faris, Leake & Emmett, Francis Emmett, Lester J. Lautenschlaeger, Jr., New Orleans, La., for respondents.

J. SKELLY WRIGHT, District Judge.

Julius Brown was injured while attempting to ascend from the main deck of the tug D'Iberville [1] to the pilothouse deck via a heavy wooden ladder approximately four feet high. The ladder was the only means of access to the pilothouse. Brown was thrown to the main deck of the tug when the ladder came loose from the coaming around the pilothouse deck. He sues the owners and insurers of the tug, alleging negligence and unseaworthiness.

On May 7, 1959, libelant was employed by Baroid Division, National Lead Company, as a mud handler and pusher of a mud crew. His work involved the loading and unloading of mud barges which were towed to marine drilling locations.[2] The tug in suit was used for this purpose pursuant to an agreement between respondents and Brown's employer. Under this agreement respondents would furnish an operator for the tug and Baroid's mud crew would act as deck hands, in addition to performing their function as members of the mud crew of the barge.

The accident in suit occurred while on drilling location near the mouth of the Mississippi River. Brown's purpose in

---

1. The tug D'Iberville was a wooden vessel having model bow, square stern, approximately 50 feet in length, 14 feet in breadth, and drawing approximately 4 feet of water. She was powered by a single General Motors Model 6–71 diesel engine. Her pilothouse was approximately amidships, located on a raised deck approximately 4 feet in height above main deck level. Access to the pilothouse from the main deck was by a single ladder located directly forward of the pilothouse.

2. Mud under hydraulic pressure is used in drilling oil wells to cool and clean the bit and seal off the side of the hole.

going to the wheelhouse at the time was to obtain cigarettes, it being customary for the mud crew to leave their personal belongings, together with their liquid refreshment, in the pilothouse while unloading the mud. When the accident occurred, the operator of the vessel was sleeping in the pilothouse. He heard Brown fall, went to him, and was told that he had fallen from the ladder. The operator of the tug inspected the ladder, found it had come loose, and drove two large nails through the tops of the sidepieces into the coaming of the pilothouse deck, thus securely fixing it in place.

Brown and the members of the mud crew testified that Brown fell backward from the ladder with the ladder landing on his stomach. Though hurt, he felt that the pain would pass off so he could return to work. When the pain persisted, he was sent back to Venice, Louisiana, in a crew boat and then rushed in an ambulance to a hospital in New Orleans where an emergency appendectomy was performed.

■ The connection between the appendectomy and the accident is the crucial feature of this case, there being little doubt that the tug D'Iberville was unseaworthy by reason of the defectively attached ladder.[3] Nor can there be any doubt that respondents were negligent in maintaining such a ladder on board the vessel.[4] The surgeon who performed the operation diagnosed Brown's condition as traumatic rupture of the appendix. His diagnosis was confirmed by a second surgeon who was of the same opinion. The doctors produced by respondents, however, were not so sure. Both testified that in their opinion Brown's appendix did not rupture traumatically, that the pathological findings confirm the fact that Brown had long been suffering from appendicitis, that

his appendix had long been inflamed, and that, in their opinion, the diagnosis of Brown's case should have been routine appendicitis instead of traumatic rupture of the appendix. On cross-examination both conceded that Brown's appendix did rupture, that the rupture of a diseased appendix could be precipitated by a blow in the area, and that it is possible that this was the mechanism of Brown's injury.

■ The medical testimony being what it is, it is difficult for a layman to determine with assurance whether, in fact, there was a connection between Brown's appendectomy and his accident. Certainly, as a general rule appendicitis is not precipitated by trauma. Here there is evidence that Brown had complained of his stomach on several occasions long prior to the accident. These complaints are confirmatory of the pathological findings of inflamed appendix indicating a condition of long standing. But Brown's prior bouts with stomachache passed off. And his appendix apparently ruptured when he fell from the ladder. The doctors for libelant give it as their opinion that the rupture was traumatically induced. The doctors for respondent admit that a diseased appendix could rupture under trauma. Under the circumstances, this court must accept the probability of a connection between the trauma and the rupture.

There is also evidence of umbilical hernia. Brown's doctors testified that this probably was related to his operation, either by the surgery itself or by the scarring attendant the healing of the incision. On the other hand, there is substantial medical evidence in the record to indicate that the hernia is congenital and in no way affected by the appendectomy. Moreover, it appears that the hernia, although the subject of

---

**3.** Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

**4.** In the circumstances of this case, as to Brown, respondents warranted the sea-

worthiness of the tug. Even if Brown were but a passenger, as respondents suggest, the negligence here would provide a basis for recovery. Kermarec v. Compagnie Generale, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550.

Brown's complaints, is not disabling. In fact, admittedly, Brown is disabled, but from a heart condition totally unrelated to this accident. Under the circumstances, it appears that this record provides no firm basis for connecting Brown's hernia with his operation or with his accident.

The record shows that Brown was disabled approximately four months as a result of the appendectomy. At the time of his accident he was earning approximately $272 per month. He is entitled, therefore, to $1,088 for loss of earnings and $5,000 for pain and suffering.

Decree accordingly.