**Frank W. KEELE, Plaintiff,**

**v.**

**OXFORD SHIPPING CO., LTD., a corporation, Defendant.**

Civ. No. 81–812–JU.

United States District Court, D. Oregon.

Jan. 5, 1983.

Bernard Jolles, Portland, Or., for plaintiff.

Craig C. Murphy, Wood, Wood, Tatum, Mosser, Brooke & Holden, Portland, Or., for defendant.

## ORDER

BELLONI, District Judge.

I have reviewed Magistrate Juba's order of November 24, 1982. I agree with his opinion and I adopt it as the opinion of this court.

## ORDER

Nov. 24, 1982.

GEORGE E. JUBA, United States Magistrate.

The plaintiff is a longshoreman who was hired to help unload cargo from the S/S Eastern Saga. On his way to work, he fell over a bucket in a narrow passageway in the defendant's ship, injuring his knee. He brought this action against the shipowner, Oxford Shipping Co., under section 5(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b), contending that the injury he suffered was a result of the defendant's negligence.

At trial plaintiff obtained a jury verdict of $38,937. The defendant moves for a judgment notwithstanding the verdict or, in the alternative, for a new trial. Fed.R. Civ.P. 50(b), 59(a). The defendant contends that there was insufficient evidence of shipowner negligence to support the jury's verdict, and that the court inadequately instructed the jury.

## APPLICABLE LAW

Section 5(b) of the Longshoremen's and Harbor Workers' Compensation Act, as amended in 1972, represented a significant change in the law. Before 1972, a longshoreman's recovery against the vessel was based on negligence, or on the "traditional seamen's remedy [for] breach of the vessel's absolute, nondelegable duty to provide a seaworthy vessel." H.Rep. No. 92–1441, 92d Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Ad.News 4698, 4702. *See Seas Shipping Co., Inc. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). 1972 amendments to the Act eliminated seaworthiness as a theory of longshoreman recovery. Instead, an injured longshoreman could bring a statutory negligence action for damages against the vessel. Whether a particular vessel was negligent was designated for courts and juries to resolve "through the application of accepted principles of tort law and the ordinary process of litigation . . . ." H.Rep. No. 92–1441, *supra,* at 4704.

It is clear from the legislative history that Congress wanted to create incentives for both the vessel and the stevedore to provide a safe workplace for longshoremen. Under 33 U.S.C. § 904, the employer is liable for compensation. Before 1972, the employer could be required to indemnify the vessel as well. *See, e.g., Ryan Stevedoring Co., Inc. v. Pan Atlantic S.S. Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The amendments to the Act eliminated this possibility, requiring the vessel to be liable for its own negligence, but not the negligence of the stevedore or its employees. H.Rep. No. 92–1441, *supra,* at 4704.

In 1981, the Supreme Court resolved the disagreement among the circuit courts of appeals over which "accepted principles of tort law" to apply in a longshoreman's negligence action against the vessel, in *Scindia*

*Steam Navigation Co., Ltd. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). Before the *Scindia* decision, the Second, Fourth, and Fifth Circuits looked to the *Restatement (Second) of Torts* §§ 343, 343a for the relevant tort principles. *See, e.g., Evans v. Transportation Maritime Mexicana S.S. "Campeche",* 639 F.2d 848 (2d Cir.1981); *Gay v. Ocean Transport & Trading, Ltd.,* 546 F.2d 1233 (5th Cir.1977); *Anuszewski v. Dynamic Mariners Corp., Panama,* 540 F.2d 757 (4th Cir.1976), *cert. denied,* 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977). The First, Third, and Ninth Circuits considered these *Restatement* sections inconsistent with congressional intent to reject common law rules of contributory negligence and assumption of risk. *See, e.g., Santos v. Scindia Steam Navigation Co.,* 598 F.2d 480 (9th Cir.1979), *aff'd and remanded,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981); *Sarauw v. Oceanic Navigation Corp.,* 622 F.2d 1168 (3rd Cir. 1980), *vacated and remanded,* 451 U.S. 966, 101 S.Ct. 2039, 68 L.Ed.2d 344 (1981); *Johnson v. A/S Ivarans Rederi,* 613 F.2d 334 (1st Cir.1980), *cert. dismissed,* 449 U.S. 1135, 101 S.Ct. 959, 67 L.Ed.2d 325 (1981).

The plaintiff in *Scindia* was a longshoreman who was injured when the defective braking mechanism on a winch caused sacks of wheat, which were being loaded, to drop on him. The district court had granted summary judgment for the vessel, the Ninth Circuit reversed, and the Supreme Court affirmed.

The Ninth Circuit used a "reasonable care under the circumstances" standard, drawn from earlier Supreme Court decisions, for measuring the negligence of the vessel. *See, e.g., Federal Marine Terminals, Inc. v. Burnside Shipping Co., Ltd.,* 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 385 (1969); *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

The Supreme Court had "no quarrel with this standard." *Scindia,* 451 U.S. at 164, n. 10, 101 S.Ct. at 1620, n. 10. But the Court qualified its acceptance of the standard. "Inevitably, however, the rule will undergo refinement as it is applied to various categories of cases." *Id. Scindia's* contribution to this process of refinement of the "reasonable care under the circumstances" rule can be summarized this way: the nature of the vessel's duty depends on whether the stevedore has begun its work. If work has begun, the vessel's duty may be, but is not necessarily, terminated. Additional issues then become relevant: the knowledge of the vessel, the scope of the stevedore's legal duty, and the degree of the danger. This summary is given more expansive treatment in the discussion that follows.

In the category of cases involving injuries that occur in the course of the stevedore's operations, a rational approach to the shipowner's liability must flow from the premise that the stevedore is in a better position to prevent injuries to longshoremen. The facts of *Scindia* were within this category of cases; it was in this category that the Court held that the Ninth Circuit's "reasonable care under the circumstances" standard went too far. "Reasonable care" did not include a continuing duty to inspect the cargo operations after the stevedore's operations began. *Id.* In effect, *Scindia* created alternate branches of analysis of the shipowner's duty in negligence actions against the vessel, depending on whether the stevedore has begun its work.

▪ This approach is consistent with Congress's intent. The imposition of a continuing duty to inspect would "repeatedly result in holding the shipowner liable for conditions that are attributable to the stevedore, rather than the ship," thereby thwarting Congress's scheme to evenly allocate incentives between the vessel and the stevedore for creation of a safe workplace. *Id.* at 169, 101 S.Ct. at 1623. Therefore, "absent contract provision, positive law, or custom to the contrary," the shipowner has no general duty to discover "dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore." *Id.* at 172, 101 S.Ct. at 1624.

▪ Even after cargo operations have begun the vessel may have a duty to act if

it is chargeable with knowledge of the danger to the longshoreman posed by ship's gear that was defective when operations began, or that developed a defect during operations. *Id.* at 178, 101 S.Ct. at 1627.

It is also accepted that the vessel may be liable if it actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation.

*Id.* at 167, 101 S.Ct. at 1622.

The vessel's duty is different after the stevedore's work begins.

This duty extends at least to ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.

*Id.* (citing *Federal Marine Terminals, Inc. v. Burnside Shipping Co., Ltd.,* 394 U.S. 404, 416 n. 18, 89 S.Ct. 1144, 1151 n. 18, 22 L.Ed.2d 385 (1969)).

The *Scindia* standard has been, as the Ninth Circuit recently observed, a "source of some confusion." *Subingsubing v. Reardon Smith Line, Ltd.,* 682 F.2d 779, 780 (9th Cir.1982). The arguments that the defendant so vigorously propounds are evidence of the truth of this observation. An essential step in the *Scindia* analysis is to separate that opinion into two parts; the vessel's duty of reasonable care under the circumstances means something different and requires more complex analysis after the

stevedore has begun to work. Where, as in this case, the uncontradicted testimony was that the longshoremen were coming aboard to start work when the plaintiff was injured, only the first part of the *Scindia* analysis applies. The extensive quotations from the *Scindia* opinion with which the defendant supports its arguments are drawn, to a great extent, from the Court's analysis of "the vessel's duty under § 905(b) once the stevedore's cargo operations have begun." *Scindia,* 451 U.S. at 167, 101 S.Ct. at 1622.

Two recent Ninth Circuit opinions reflect these divergent branches of analysis. Presented with facts analogous to the ones presented during the trial of this case, the Ninth Circuit relied on that portion of the *Scindia* analysis that relates to the vessel's duty to provide a reasonably safe place to work: "to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property . . . ." *Subingsubing v. Reardon Smith Line, Ltd.,* 682 F.2d 779, 781 (9th Cir.1982). In *Subingsubing,* the plaintiff stepped on a small piece of wood that had become detached from a rope ladder and was lying on the deck of the ship. He was mortally injured. The district court granted summary judgment for the vessel.

The appeals court's opinion implicitly recognizes that *Scindia* defines the vessel's duty of reasonable care under the circumstances according to whether the dangerous condition exists when the longshoremen come aboard, or whether it arises during the stevedore's operations. In *Subingsubing* the court defined the issue: "Did defendants owe a duty of reasonable care to remove from the ship deck, before longshoreworkers came aboard, a dangerous non-obvious tripping hazard?" *Id.* at 780. The court concluded that they did, and remanded for trial to determine whether that duty was breached. *Id.* at 782.

In support of its decision, the appeals court pointed to the legislative history of the 1972 amendments, as did the *Scindia*

Court. *Id.* at 781. *See also Scindia,* 451 U.S. at 164–66, 101 S.Ct. at 1620–21. In the House Report, the Education and Labor Committee stated that

> [p]ermitting actions against the vessel based on negligence will meet the objective of encouraging safety because the vessel will still be required to exercise the same care as a land-based person in providing a safe place to work. Thus, nothing in this bill is intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition.

H.Rep. No. 92–1441, *supra,* at 4704. *See Scindia,* 451 U.S. at 166 n. 13, 101 S.Ct. at 1621 n. 13. The House Report then illustrated this point with an example of a "slip and fall" incident similar to the ones in *Subingsubing* and in this case.

> So, for example, where a longshoreman slips on an oil spill on a vessel's deck and is injured, the proposed amendments to Section 5 would still permit an action against the vessel for negligence. To recover he must establish that: 1) the vessel put the foreign substance on the deck, or knew that it was there, and wilfully or negligently failed to remove it; or 2) the foreign substance had been put on the deck for such a period of time that it should have been discovered and removed by the vessel in the exercise of reasonable care by the vessel under the circumstances.

H.Rep. No. 92–1441, *supra,* at 4704. *See Scindia,* 451 U.S. at 169 n. 16, 101 S.Ct. at 1623 n. 16.

It is apparent that the Ninth Circuit considers this portion of the legislative history instructive. In a subsequent case, *Bueno v. United States,* 687 F.2d 318 (9th Cir.1982), the court again cited the language of the House Report in support of its decision to reverse the trial court's summary judgment for the United States as owner of the vessel. *Id.* at 320; H.Rep. No. 92–1441, *supra,* at 4704. In *Bueno* the plaintiff's injuries were caused by a fire started by a floodlight, which was brought on the ship by the plaintiff's employer. The danger caused by the floodlight was a continuing one, and the court articulated the issue as "whether the shipowner should have noticed and corrected a serious danger." *Bueno,* 687 F.2d at 320. Whether the shipowner "took due care to protect the contractors" was a material question of fact precluding summary judgment. *Id.* at 321.

*Subingsubing* and *Bueno* illustrate the point that *Scindia* provides separate paths of analysis depending on the facts presented. In this case, I consider the defendant's motion in light of the fact that the plaintiff's injuries occurred before the stevedore began to work.

■ The standard for granting a motion for judgment notwithstanding the verdict is that "the evidence, viewed in the light most favorable to the prevailing party, permits only one reasonable conclusion." *Cordero v. CIA Mexicana de Aviacion, S.A.,* 681 F.2d 669, 672 (9th Cir.1982). The evidence and its inferences are considered as a whole, without weighing the credibility of the witnesses. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 668 F.2d 1014, 1026 (1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 58, 74 L.Ed.2d 61 (1982); *Hedrick v. Pine Oak Shipping, S.A.,* 531 F.Supp. 27 (D.Or.1981).

■ The Ninth Circuit rule on a motion for a new trial is that the trial court will not set aside the verdict unless it is contrary to the clear weight of the evidence or unless, in the sound discretion of the trial judge, the verdict is a miscarriage of justice. *Peacock v. Board of Regents,* 597 F.2d 163, 165 (9th Cir.1979). It is not proper to grant a new trial because the court might have reached a different result from the jury's. *Wilhelm v. Associated Container Transportation, Ltd.,* 648 F.2d 1197, 1198 (9th Cir.1981).

## JUDGMENT NOTWITHSTANDING THE VERDICT

■ The defendant's objections to the jury verdict are based on its contention that there was insufficient evidence on several

points. First, the defendant argues that the jury could not have reasonably concluded that the defendant had actual knowledge of the position of the bucket that caused the plaintiff's injury.

Robert Brandt, a longshoreman who testified for the plaintiff, stated that the longshoremen came aboard the ship at 8:00 A.M. on the morning that the plaintiff was injured. Brandt's testimony was corroborated by the testimony of Jack Grohs, the "walking boss" who also testified for the plaintiff, and by Jerry Wilhelmson, the stevedore's superintendent. Wilhelmson testified that his practice is to hire the longshoremen at 6:00 A.M., have breakfast, then come on the ship at 7:00 A.M. to talk to the mate. Jack Grohs testified that he went aboard at 7:00 A.M. to see what the cargo was, and that if Wilhelmson was aboard he would have been talking to the chief officer. He also testified that the stevedore does not usually look around the ship.

Brandt testified that he was the first man to walk through the passageway where the bucket was on his way to work on a crane. It is undisputed that the starboard side of the ship was to the dock. He said that the ship would have had to dock at the port side in Longview, Washington, where it was before it came to Portland. His testimony was that it would have been unnecessary for longshoremen to use that passageway if the ship was docked at the port side.

This testimony, and the inferences to be drawn from it, are sufficient to impute constructive knowledge of the position of the bucket in the passageway to the vessel. The jury could infer from this testimony that the ship was in the defendant's control until 8:00 A.M., when the longshoremen came aboard. The jury could also have inferred that the ship was responsible for the placement of the bucket, and thus had knowledge of it. Alternatively, the jury could have inferred that the bucket had been in the passageway "for such a period of time that it should have been discovered and removed ...." H.Rep. No. 92–1441, *supra,* at 4704.

The defendant's second objection to the verdict is that the jury had insufficient evidence to reasonably conclude that the bucket constituted an unreasonably dangerous condition. The testimony on the width of the passageway varied. The figure cited most often was eighteen inches, but estimates ranged from an obviously absurd fourteen inches, to twenty-three inches. Photographs of the passageway and the bucket tended to show that the higher figure was nearer the mark. Kirk testified that the passageway was too narrow and was not designed to be used as a walkway. Captain Grover testified that three feet was the accepted width for a ship's passageway, but that the passageway was designed for use as such, despite its narrowness.

The bucket was twelve inches square. Brandt testified that the bucket was in the middle of the passageway, and that he happened to look down and see it at the last minute, then "hopped over it." Keele was immediately behind Brandt, and the testimony conflicted on whether he kicked the bucket or stepped in it. Keele testified that Brandt, who is a large man, completely obstructed his view of the bucket. Jack Grohs testified that the bucket was unsafe, a stumbling block. Brandt testified that he did not anticipate having the bucket in the passageway. Wilhelmson testified that buckets are commonly used under the oil pipes that descend from cranes on every ship.

While this evidence was contradictory in some respects, the jury could have concluded that the bucket was an unreasonably dangerous condition.

The third ground on which the defendant objects to the verdict is that there was insufficient evidence from which the jury could have reasonably concluded that the defendant should have anticipated harm to the plaintiff from the bucket's location. A mainstay of the plaintiff's argument is that the bucket was an obvious hazard, if a hazard at all. However, from the testimony recounted above, the jury could infer that the bucket was a nonobvious hazard

**1000**

from which the defendant could have anticipated the harm to the plaintiff. Therefore, the grounds cited by the defendant are insufficient to justify granting its motion for judgment notwithstanding the verdict; the motion is denied.

### NEW TRIAL

The defendant bases its alternative motion for a new trial on the legal insufficiency of the jury instructions. The defendant's objections to the court's instructions are largely based on its incorrect analysis of *Scindia*. The defendant's arguments fail to recognize the changing nature of the duty of reasonable care under the circumstances according to the factual setting of a particular case. Instead, the court is exhorted to recognize that "reasonable care under the circumstances" is an obsolete standard. A simple reading of *Scindia* belies this notion. *See Scindia*, 451 U.S. at 164 n. 10, 101 S.Ct. at 1620 n. 10. The defendant's assertion that it is entitled to place its reliance on the stevedore to ensure the safety of longshoremen is true within limits. Where, as here, the stevedore's operations had not commenced, the scope of the stevedore's duty is not particularly relevant.

The defendant's objection to the instructions on the ground that they do not address the defendant's constructive knowledge of the bucket's position is not well taken. The court instructed the jury that a prerequisite to shipowner liability was that it "knows of or by reasonable care would discover, the conditions which caused plaintiff's injury." The court further instructed that a second prerequisite was that "the shipowner should realize that the condition is not obvious and involved an unreasonable risk of harm to the longshoreman ...." While the defendant urges that this instruction does not define an unreasonable risk of harm with sufficient clarity, taken in context the risk is linked to the obviousness of the hazard—a link that the defendant repeatedly argued to the jury.

The defendant's alternative motion for a new trial is denied.