EDITH H. JONES, Circuit Judge,
dissenting:
Although my esteemed colleagues have persuasively stated their reasons for sending this case to the jury on the liability of MEM-CO as the owner of barge RTA-9, I cannot agree that MEMCO had a duty to remove fertilizer from the deck of its barge under the facts before us. The barge owner was not responsible for its barge’s being in the ContiCarriers fleet on the date of the accident, and under these circumstances, MEM-CO had no duty to clean its deck of grain residue. I respectfully dissent.
Preliminarily, I agree that Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), is generally applicable to govern MEMCO’s liability; therefore, a i barge owner is not relieved of its duty of care as a matter of law anytime it turns over a barge to a repair facility. I also agree that the Stass and Meserole cases, being founded on § 905(b) liability, are distinguishable. But, read fairly, the district .court decision does not suggest that Kermarec is not applicable.' Rather, the district court indicated the narrowness of its holding by stating that summary judgment was “appropriate under the facts of this case.” Thus, instead of holding that barge owners may never be liable for injuries that occur while a barge is in the custody of the repair facility, the district court held only that under the particular circumstances of this case, the barge owner cannot be held hable for this accident. Kermarec likewise establishes a shipowner’s duty to exercise reasonable care “under the circumstances” of a case.
When barge RTA-9 was originally placed in the Carrolton Fleet on August 8, 1989, to await offloading, it was loaded with fertilizer. ContiCarriers offered barge cleaning services at its facility for a fee. MEMCO did not request ContiCarriers to clean the RTA-9 while it was in the Fleet, however, because it normally made its own arrangements for cleaning, if needed, after offloading. When the RTA-9 was placed in the Fleet, MEMCO *103 had no intention of returning the barge to the Fleet after offloading, and MEMCO apparently saw no reason to have the barge cleaned before it discharged its cargo.
While the RTA-9 was still in the Fleet, Progressive damaged the barge during handling such that repairs would be required once the barge was offloaded. It was for this reason alone that the RTA-9 was returned to the fleet on September 7, 1989, after its cargo had been discharged. Unlike the previous month, the RTA-9 was. not placed in the fleet on MEMCO’s account. The damages to the barge had been caused by Conti-Carriers’ agent, and ContiCarriers was undertaking for its own account to repair the RTA-9 and return it to MEMCO in seaworthy condition. Under these unusual circumstances, it is surprising to me that this court would impose on MEMCO a duty to clean the barge when the necessity to clean the barge, if any existed, was brought about entirely by the wrongful conduct of Conti-Carriers or its agent which caused the damage.[1]
The majority rely on Verdin v. C & B Boat Co., 860 F.2d 150 (5th Cir.1988), for the proposition that a barge owner may be held hable for a hazardous condition on a barge it has turned over to another company. I do not disagree with that general rule, although Verdin did not squarely address the point. Verdin’s facts are distinguishable, however, because the owner had failed for some time to remedy obvious hazards on its barge covers while knowing the barge was in use.
Even if MEMCO had a duty to remove fertilizer residue from the decks of the barge before it went back to ContiCarriers in September, I think the evidence of causal connection between the existence of the residue and Captain Wall’s injury is probably too speculative to support a verdict for his rela-fives. This is not a Jones Act ease as to MEMCO, and more than mere speculation over the cause of death should be necessary to justify a verdict for general maritime negligence. See In re Cooper/T. Smith, 929 F.2d 1073, 1077 (5th Cir.1991). I respectfully dissent.

. ContiCarriers was apparently unwilling to clean the barge at its own expense. The district court also relied on OSHA regulations requiring ContiCarriers to erect safeguards and remedy unsafe conditions on barge walkways and work areas, 29 C.F.R. §§ 1915.73, 1915.91, 1915,92 (1992). I think the regulations significantly recognized that ContiCarriers, not MEMCO, was best able to determine whether any barge placed in its fleet would be used as a crosswalk for visitors dr workers and could expose them to obviously hazardous conditions such as slipperiness. Yet ContiCarriers' incentive to maintain a safe workplace may be diminished if liability for injury caused by an obvious crosswalk-type hazard, created by its decision to place the barges in a particular array, can be shunted onto an owner like MEMCO. It is unnecessary to rely solely on the OSHA regulations here, however, so I note their pertinence but would affirm the district court on the narrower basis stated in the text above.