Dorothy A. WILLE & Clifford R. Wille, Husband & Wife, Plaintiffs,

v.

Linda & Stephen DANA, Husband & Wife, and Raymond Dana, dba Linda Sue Charters, III, an Oregon Partnership; The M/V Oakland Pilot; and John Doe, Defendants.

Civil No. 95–882–FR.

United States District Court, D. Oregon.

April 16, 1997.

Michael B. Mendelson, Portland, OR, for Plaintiffs.

Daniel F. Knox, Schwabe, Williamson & Wyatt, Portland, OR, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

FRYE, Judge:

This is an action brought in admiralty for the personal injuries allegedly suffered by the plaintiff, Dorothy A. Wille, while she was a passenger aboard a charter fishing vessel owned and operated by the defendant, Stephen Dana. The action was tried to the court on March 4, 1997 and March 5, 1997. The following recitation of facts constitutes the findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure.

### FACTS

On June 20, 1993, eight passengers, the captain, and two crew members embarked on a halibut fishing trip in the Pacific Ocean off the coast of the State of Oregon aboard the charter boat, the M/V OAKLAND PILOT. The passengers included the plaintiffs, Dorothy Wille and her now deceased husband, Clifford R. Wille, and their two adult sons, Stephen Wille and Robert Wille. For Dorothy Wille, Clifford Wille, and Robert Wille, this was their first fishing trip offshore, although each had had some experience boating and fishing on inland waters. Stephen Wille had fished offshore a few times.

The M/V OAKLAND PILOT is owned and operated by the defendant, Stephen Dana, who operates a charter boat business out of

the City of Garibaldi, Oregon. Stephen Dana is licensed by the United States Coast Guard to operate the M/V OAKLAND PILOT and is an experienced seaman with over twenty years of experience in charter boat fishing operations. The M/V OAKLAND PILOT is more than fifty feet in overall length and is registered at forty-three gross tons. The crew of the M/V OAKLAND PILOT consisted of deckhands Ray Dana, the twelve year old son of Stephen Dana, and Mark Craven, nineteen years old. At the time of the trip, both crew members had had several years of experience working in charter boat fishing.

The M/V OAKLAND PILOT departed about 5:00 a.m. for a small gravel field approximately twenty-five miles west/southwest of the Port of Garibaldi where halibut could be found in waters approximately 850 feet deep.

The skies were overcast. There was no rain. Ocean waves were six to eight feet in total height from trough to crest. The ocean was a rough ocean for persons inexperienced in offshore fishing, but the weather conditions and the movement of the ocean were neither unusual or dangerous. Captain Stephen Dana noted in the log of the M/V OAKLAND PILOT for that day that it was a "rough ocean." Defendant's Exhibit 120. Nonetheless, it was a "fishable" day, and the entire fleet of charter vessels in Garibaldi put to sea that day.

Before the departure of the M/V OAKLAND PILOT, crew member Mark Craven explained to all of the passengers the location of the vessel's life jackets. Craven showed the passengers how to put on their life jackets and told them to wear their life jackets if they wished, unless and until they were instructed to do so by the captain. No passenger aboard the M/V OAKLAND PILOT wore a life jacket at any time during that day. Craven further instructed the passengers that they would all be fishing from the starboard side of the vessel in order to avoid tangling their fishing lines. Dorothy Wille did not hear Craven say that all passengers would fish from the starboard side of the vessel.

Shortly before the vessel arrived at the fishing grounds, crew members Craven and Ray Dana set up fishing poles along the starboard side of the vessel for the eight passengers, attaching heavy weights and bait to the lines. At least one extra pole was rigged for use as a quick replacement and/or for use by the crew. The extra pole was placed in a holder on the port side of the vessel.

When Stephen Dana reached the fishing grounds, he instructed the passengers to take up their fishing positions along the starboard rail of the vessel. Clifford Wille, Stephen Wille, and Robert Wille left the cabin first and moved forward along the starboard side to fishing positions near the bow, which were the three forward-most fishing positions. Dorothy Wille left the cabin after all of the remaining passengers had taken up their fishing positions along the starboard rail of the vessel. Dorothy Wille testified that she could not find a place at the starboard rail, and so she picked up the fishing rod from the port side and positioned herself near the corner of the port stem. Dorothy Wille put her line in the ocean, and it quickly became tangled in the propeller of the vessel. Crew member Ray Dana went to assist Dorothy Wille. Ray Dana broke the line and re-rigged Dorothy Wille's fishing pole. Ray Dana told Dorothy Wille not to fish from the back of the boat, and that she would have to move forward. Dorothy Wille then took her fishing pole and walked up the port side of the vessel to the bow.

When Dorothy Wille reached the bow of the vessel, she placed her fishing pole in a holder and held onto the rail after being told not to let her line down. Crew member Craven saw Dorothy Wille at the bow. Within minutes, the vessel was powered up to move forward in order to commence another drift over the halibut fishery gravel field. As the vessel's bow passed over a wave, Dorothy Wille was lifted up and off her feet. She fell on the deck breaking her right ankle. Stephen Wille and Robert Wille were at the bow of the vessel when Dorothy Wille was lifted up and off her feet, but they did not lose their footing.

After her fall, Dorothy Wille was taken into the cabin of the vessel. She insisted that the trip continue. After approximately an hour, her ankle was swelling and her discomfort was increasing. The M/V OAKLAND PILOT returned to port.

Dorothy Wille declined Stephen Dana's offer to take her to a local hospital. She wanted to return to Portland. She arrived at the emergency room of the Kaiser Permanente Medical Office at 4:36 p.m. and was admitted for surgery. Wille had a fracture of the right ankle requiring open reduction and internal fixation with a metal plate and screws. She was discharged on June 23, 1993. Her activities were severely restricted for at least six months. She was unable to do regular household tasks for approximately one year.

On June 19, 1995, Dorothy Wille and Clifford Wille filed this action alleging that Stephen Dana, the captain of the M/V OAKLAND PILOT, and his crew members negligently caused her injury. Dorothy Wille seeks damages for pain and suffering, emotional distress, and impaired living capacity and quality of life from the time of the accident into the foreseeable future. Dorothy Wille's husband, Clifford Wille, seeks damages for the loss of his wife's society, companionship and services from June 20, 1993 until the time of his death. Dorothy Wille was appointed the personal representative of the estate of Clifford R. Wille and, by stipulated substitution, brings a survival claim for the estate of Clifford R. Wille.

## APPLICABLE STANDARD

■ The plaintiff, Dorothy Wille, has the burden of proving her claim of negligence by a preponderance of the evidence. Preponderance of the evidence means the greater weight of the evidence. It is such evidence that, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. If upon any question in the case, the evidence appears to be equally balanced, or if the court cannot say upon which side the evidence weighs heavier, the question must be resolved against the party upon whom the burden of proof rests.

## APPLICABLE LAW

■ The standard of care due to passengers under maritime law is the standard of care due in state and federal negligence cases, which is "reasonable care under the circumstances." *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 632, 79 S.Ct. 406, 410, 3 L.Ed.2d 550 (1959). In *Peters v. Titan Navigation Co.,* 857 F.2d 1342, 1344 (9th Cir.1988), the United States Court of Appeals for the Ninth Circuit stated:

Federal maritime law governs the rights and obligations of the parties in this diversity case. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 628, 79 S.Ct. 406, 408–09, 3 L.Ed.2d 550 (1959). This is a maritime tort action for negligence. Peters is not a seaman, but a ship repairman. Hyundai and McMullen are not Peter's [sic] employer. Therefore, the duty owed Peters is the ordinary negligence duty of reasonable care under the circumstances.

## CONTENTIONS OF THE PLAINTIFF

The plaintiff, Dorothy Wille, contends:

4. Defendant Stephen Dana was negligent in failing to properly see to the safety of his passengers so that they were not unnecessarily endangered and in failing to properly supervise his crewmen to see that all passengers were directed to fish from the safest possible areas of the vessel consistent with their experience and ability.

5. Crew members Ray Dana and Mark Craven were negligent in failing to instruct Mrs. Wille to wear a life vest under the circumstances existing when the Oakland Pilot turned into the waves and in directing her to fish from the bow of the Oakland Pilot which was the most hazardous place from which to fish.

Plaintiff's Proposed Findings and Argument, p. 11.

## CONTENTIONS OF THE DEFENDANT

The defendant, Stephen Dana, contends that the plaintiffs have failed to meet their burden of proving that anyone was unreason-

ably endangered aboard the vessel. Stephen Dana contends that, by her own testimony, Dorothy Wille was instructed that she could not fish from the port corner near the stem, and that she should "go forward." Stephen Dana contends that Dorothy Wille was not instructed to go to the bow, but was simply told to "go forward"—meaning away from the stem in order to avoid entangling her line again. Stephen Dana contends that Dorothy Wille was not told to fish from the bow, but that she went there because she chose to go there. Stephen Dana further contends that there is no testimony from anyone that the bow poses a greater risk to the normally careful person than does any other position on a charter fishing vessel.

### RULING OF THE COURT

There was no negligence in undertaking passenger operations under the conditions existing on June 20, 1993. While the seas were rough, the condition of the seas did not present an unreasonable risk to passengers of the M/V OAKLAND PILOT. There was no negligence is not requiring Dorothy Wille to wear a life vest; whether she wore or did not wear a life vest is irrelevant. The only issue in this case is whether the captain and the crew members breached their duty of reasonable care under the circumstances to assure the safety of Dorothy Wille while she was on board and fishing from the charter boat, the M/V OAKLAND PILOT.

Given the weather conditions, there was no reason for the captain or the crew members of the charter boat, the M/V OAK-LAND PILOT, to believe that Dorothy Wille was in harms way when she proceeded to the bow of the boat. The testimony at trial was uniform that the movement of the vessel at the bow was not appreciably different from the movement of the vessel at any other position on the deck of the boat. The court concludes that Dorothy Wille has not proven by a preponderance of the evidence that the captain and the crew members breached their duty of reasonable care under the circumstances to her, and that the breach of the duty of reasonable care under the circumstances caused her to lose her footing and to fall.

The court finds that the defendants are entitled to judgment in their favor.