[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16889

_____

D.C. Docket No. 1:15-cv-23603-KMM

GABRIELE KRESSLY,

Plaintiff - Appellant,

versus

OCEANIA CRUISES, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 13, 2017)

Before HULL and DUBINA, Circuit Judges, and RESTANI,[*] Judge.

_____

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

PER CURIAM:

Gabriele Kressly ("Kressly") appeals the district court's order granting summary judgment to Defendant Oceania Cruise, Inc. ("Oceania") on her negligence claim against Oceania for damages relating to physical injuries, physical handicap, lost wages, medical expenses, mental anguish, and loss of enjoyment of life resulting from an injury Kressly sustained while on board Oceania's ship, the Regatta.  After reviewing the record, reading the parties briefs, and having the benefit of oral argument, we affirm.

## I.    BACKGROUND

Kressly and her husband boarded the Regatta on October 20, 2014, for a cruise scheduled to sail from Montreal to Quebec, Nova Scotia, Bar Harbor, Boston, New York, Charleston, and Miami.  On November 1, near the end of the 16-day cruise, the Regatta left Bermuda on a course towards Charleston, South Carolina.  Early that morning, Captain Jakub Meinhardt Hanusson Hansen ("Captain Hansen") noted the weather appeared to be significantly worse than what he had seen in the forecasts.  When he realized the significant weather change, Captain Hansen adjusted the Regatta's course to head further south and away from worsening weather conditions.

2

Around noon, Captain Hansen issued his first adverse weather announcement. Oceania has an established protocol for issuing warnings related to adverse weather conditions. (R. Doc. 31-11.) In addition to notifying the passengers that the ship will be experiencing adverse weather and reading the specific forecast, the Captain makes the following statement:

> Due to the potential of rough seas, we kindly ask our Guests to exercise extreme caution when moving around the ship, use the hand rails when on stairways, keep Stateroom, bathroom doors and cupboards closed, and fingers away from door frames, as doors may close suddenly and with some force. When using the shower or bath please use the hand rail. If proceeding on the open decks please use the handrails as the deck may be slippery from sea spray or rain. To avoid any discomfort to our Guests the stabilizers have been extended and the course and speed adjusted to minimize the ship's motion.

*Id.* As per Oceania's policy, the Cruise Director makes the same announcement again immediately following the Captain's announcement. (R. Doc. 31-11.)

At approximately 5:00 p.m. that same day, Captain Hansen issued another warning and reduced the speed of the Regatta. In addition to the standard warning, Captain Hansen advised passengers that it was safest to remain seated on sofas until the weather improved and that the safest part of the ship was mid-ship, at deck four or deck five. According to the Captain's logbook, the worst of the storm occurred between 5:00 p.m. and midnight. (R. Doc. 31-8.)

3

At about 6:10 p.m., Kressly attempted to stand and move across her cabin room when the ship pitched, causing her to be thrown into the air.  As a result, Kressly suffered a fracture to her left hip, which required surgery, hospitalization, and physical therapy.

## II.    ISSUE

Whether the district court properly granted summary judgment to Oceania on Kressly's negligence claim.

## III.    STANDARD OF REVIEW

We review "a district court's grant of summary judgment de novo, applying the same legal standards used by the district court."  *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008).  "Summary judgment is appropriate where 'there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'"  *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1271 (11th Cir. 2001) (quoting Fed. R. Civ. P. 56(c)).

## IV. DISCUSSION

Essentially, Kressly urges this court to adopt a heightened standard of care for vessels when they transport passengers during tumultuous weather.  She contends that the district court erred in granting summary judgment to Oceania because the district court applied the wrong standard of care under the unique

4

circumstances of this case.  She also argues that Oceania had actual and constructive notice of the dangerous conditions because weather forecasts predicting the storm were available to the Captain days prior to the November 1 storm, and the Captain witnessed firsthand the deteriorating weather conditions prior to the storm's impact on the Regatta.  Under these circumstances, Kressly argues that the reasonable standard of care was not sufficient, and Oceania owed her a heightened degree of care to protect her against the unique maritime peril that caused her accident.  Just as the district court did, we reject Kressly's arguments.

The federal maritime law in this circuit is clear that the owner of a vessel in navigable waters owes passengers a duty of reasonable care under the circumstances.  *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015).  Importantly, Kressly does not provide any circuit precedent to support her contention that, under the specific circumstances of this case, Oceania owed her a heightened standard of care.  She refers to a Ninth Circuit case, *Catalina Cruises v. Luna*, 137 F.3d 1422 (9th Cir. 1998), but mischaracterizes the court's holding.  In that case, the court merely clarified that "where the risk is great because of high seas, an increased amount of care and precaution is reasonable."  *Id.* at 1425–26.

In *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S. Ct. 406 (1959), the Supreme Court held that "[i]t is a settled principle of maritime

5

law that a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Id.* at 630, 79 S. Ct. at 409. Kressly attempts to distinguish this valid law by asserting that that case involved a non-passenger/non-paying visitor. This distinction does not have any bearing upon the Supreme Court's conclusion. The Court determined that a carrier owed an equivalent standard of reasonable care to any licensee aboard a vessel, whether categorized as a paying passenger or not. *Id.* at 632, 79 S. Ct. at 410. *See also Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) ("Concerning the duty element in a maritime context the Supreme Court held in *Kermarec* [] that a 'shipowner owes the duty of exercising *reasonable care* towards those lawfully aboard the vessel who are not members of the crew.'" (quoting *Kermarec*, 358 U.S. at 630, 79 S. Ct. at 409)); *Keefe v. Bahama Cruise Line Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) ("the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances . . . which requires . . . that the carrier have had actual or constructive notice of the risk-creating condition").

Because Oceania owed Kressly a reasonable standard of care, Kressly has to demonstrate that Oceania had the requisite notice of the dangerous conditions to the Regatta and its passengers. She cannot satisfy this requirement. The record

6

does not demonstrate that Captain Hansen was unreasonable in charting the Regatta's course, let alone intentionally endangering passengers. Although Captain Hansen knew of the adverse weather prior to November 1, there is no indication that such severe weather was near the Regatta's location. Even Kressly's own expert, Douglas M. Torborg, a Master Mariner-Marine Consultant, does not provide any evidence to suggest that the route taken by Captain Hansen was not viable. He did state there was another route which, in his opinion, would have been the better course, but he proffers nothing to show that Captain Hansen's course was unreasonable under the circumstances. (R. Doc. 31-6.) Moreover, Captain Hansen testified at his deposition that he was continually apprised of weather conditions; hence, Oceania did not have the requisite actual and constructive notice that the severity of the weather would necessarily cause a risk-creating condition in Kressly's cabin.

Finally, Kressly challenges the adequacy of Oceania's warnings about the implications of adverse weather. However, the record supports that Captain Hansen's warnings were sufficient. The warnings alerted the passengers that during the severe weather, they should remain seated, and the best place on the ship was mid-ship, either deck four or deck five. Kressly acknowledged that she heard the announcements about the severe weather and that she had sailed on 13

7

previous cruises.  Furthermore, Kressly provides no evidence that the Captain or Oceania was aware of a specific risk-creating condition in her cabin due to the severe weather of which they had a duty to warn.  *See, e.g., Smith v. Royal Caribbean Cruises, Ltd.*, 620 F. App'x 727, 730 (11th Cir. 2015) (finding that Defendant did not breach its duty of reasonable care by failing to warn Plaintiff of a condition of which he, as a reasonable person, would be aware).

In conclusion, because we reject all of the arguments Kressly makes in this appeal, we affirm the district court's grant of summary judgment in favor of Oceania.

AFFIRMED.