

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-6-2006

# Goldsmith v. Swan Reefer AS

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2023

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Goldsmith v. Swan Reefer AS" (2006). *2006 Decisions.* Paper 1295.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1295

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>NOT PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-2023

———

NATHANIEL GOLDSMITH,
                                        <u>Appellant</u>

v.

SWAN REEFER A.S.
and
DEL MONTE FRESH PRODUCE N.A., INC.

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-02259)
District Judge: Honorable Joseph H. Rodriguez

———

Argued February 28, 2006

Before: SLOVITER, FUENTES, <u>Circuit Judges</u>, and BRODY,[*] <u>District Judge</u>

(Filed: April 6, 2006)

OPINION

———

———

[*] Hon. Anita B. Brody, United States District Court for the Eastern District of
Pennsylvania, sitting by designation.

1

E. Alfred Smith, Esquire (ARGUED)
1333 Race Street, 2nd Floor
Philadelphia, PA 19107

Counsel for Nathaniel Goldsmith


Carl D. Buchholz, III (ARGUED)
Rawle & Henderson
One South Penn Square
The Widener Building
Philadelphia, PA 19107

Counsel for Swan Reefer A.S.


Brian L. Calistri (ARGUED)
Weber, Gallagher, Simpson, Stapleton, Fires & Newby
2000 Market Street, Suite 1300
Philadelphia, PA 19103

Counsel for Del Monte Fresh Produce N.A., Inc.


BRODY, <u>District Judge</u>.

The plaintiff-appellant, Nathaniel Goldsmith ("Goldsmith"), appeals from the order and judgment of the United States District Court for the District of New Jersey granting summary judgment in favor of defendant-appellees Swan Reefer A.S. ("Swan Reefer"), the owner/operator of the ship at issue, and Del Monte Fresh Produce N.A., Inc. ("Del Monte"), the terminal operator. The District Court held that Goldsmith had failed to create any genuine issue of material fact to support a negligence claim against Swan

2

Reefer under the Longshore and Harbor Workers Compensation Act ("LHWCA"), or a general maritime negligence claim against Del Monte. App. 51a. For the reasons that follow, we affirm.

## I.

### Background[1]

In 2001, the terminal operator Del Monte had a contract with Swan Reefer, the owner/operator of the container ship Tundra Consumer, to transport cargo loads of fruit to the Del Monte dock in Camden. Del Monte hired Delaware River Stevedores ("DRS"), to unload cargo from ships docked at the terminal in the Port of Camden, New Jersey. DRS is a company in the business of removing metal containers of cargo from ships and placing them on trucks at the terminal on shore. Goldsmith was a longshoreman employed by DRS. DRS had no contractual relationship with Swan Reefer.

On February 20, 2001, DRS was unloading containers from the Tundra Consumer using two of the ship's cranes. App. 186a. Goldsmith was picking up discarded corner locks, used to bolt containers to each other and to the deck, that were lying on the deck. While a DRS crane operator was moving a container from its position on deck, the container swung and hit Goldsmith. Goldsmith was knocked over the side of the ship, fell onto the pier and bounced into the water. App. 73a, 208a. DRS Ship Boss William Collins ("Collins") testified that the accident had been caused by a sudden severe list of

[1]The facts are stated in the light most favorable to Goldsmith, as the non-moving party in the motions for summary judgment granted below.

the ship due to simultaneous discharge of containers. App. 273-75a.

Before Goldsmith's accident, the parties had never heard of an accident being caused by listing, even though DRS had been discharging container ships using two cranes for many years. DRS used hand signals to coordinate the operation of the two cranes to minimize listing. App. 156-157a. According to Collins, crew members from the Tundra Consumer were "always hollering about the ship listing too much" because items would turn over in the cabinets. App. 283a. Collins asserted that there was nothing DRS could do about it. Id.

Swan Reefer was operating under a time charter agreement with Del Monte on the date of the accident.[2] App. 335a. Clause 59 of the agreement, entitled "Attendance," states:

> Owners to provide at their expenses one crew watchman per hold, and one Officer on deck during whole time of loading/discharging to prevent any pilferage or misconduct to the cargo and also watch, supervise and secure proper handling and/or stowing of the cargo. App. 336a.

The ship's Chief Officer was in fact watching the discharge operation at the time of the accident. App. 435-36a. DRS was not a party to the time charter.

---

[2] The time charter was a contract between Del Monte and Lauritzen Reefers A/S ("Lauritzen"). The District Court stated that both Swan Reefer and Lauritzen owned, operated, managed and possessed the Tundra Consumer. App. 16a. Lauritzen was dismissed from the case without prejudice prior to the grant of summary judgment to Swan Reefer. On the date of the accident, the Tundra Consumer was actually under two charters: a head charter between Lauritzen and Del Monte, which contained Clause 59 (at issue here), and a sub-charter between Del Monte and Swan Reefer. Swan Reefer does not dispute that Lauritzen's obligations under the head charter apply to its sub-charter with Del Monte.

Every Friday, Del Monte's warehouse supervisor met with DRS's managers and foremen to discuss the discharge plan for the next week's cargo. App. 302-307. Del Monte told DRS to discharge the ships within a set time frame. App. 250a. The DRS Ship Foreman testified that the method and manner of unloading containers from the vessel is the responsibility of DRS, and that it would have been his responsibility to prevent abnormal listing through hand signals. App. 156-157a. Del Monte's terminal operator testified that he never thought of listing as dangerous because the discharging ships always listed. App. 19a. There is no evidence that any DRS employees had ever complained to Del Monte about any safety concerns related to the use of two cranes to discharge cargo.

## II.

### Goldsmith's Claim Against Swan Reefer

We have jurisdiction over this appeal under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment *de novo*, viewing the factual record in the light most favorable to the non-moving party. MBIA Ins. Corp. v. Royal Indem. Co., 426 F.3d 204, 209 (3d Cir. 2005).

Goldsmith brought suit against Swan Reefer for negligence under § 905 of the LHWCA. The LHWCA allows an injured longshoreman to bring an action against the owner of the vessel if his injury was "caused by the negligence of a vessel." 33 U.S.C. § 905(b). Prior to 1972, when the LHWCA was amended to add § 905(b), a longshoreman injured while unloading a ship could recover against the shipowner if the injury was

5

caused by the ship's unseaworthiness or negligence. Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 164 (1981), citing Seas Shipping Co. v. Sieracki, 328 U.S. 85 (1946). Before the 1972 amendments, if any unsafe condition existed on the vessel, the longshoreman could recover against the shipowner, "even though the condition was caused, created, or brought into play by the stevedore or its employees." Scindia, 451 U.S. at 165.

The 1972 amendments to the LHWCA abolished the longshoreman's right to recover against the shipowner for unseaworthiness, while statutorily preserving his or her right to recover for the shipowner's negligence. As the Supreme Court noted in Scindia, § 905(b) of the amended LHWCA did not specify what acts or omissions would constitute negligence on the part of the vessel. Id. The Court in Scindia went on to delineate the duties of care that the vessel owes to a longshoreman performing cargo operations. The vessel has (1) a turnover duty, requiring it to turn over the ship and its contents in safe working condition, and to warn if they are in a dangerous condition; (2) an active participation duty, to exercise due care in protecting longshoremen from hazards in equipment or areas under the active control of the vessel; and (3) a duty to intervene, if the vessel has actual knowledge of a dangerous condition and reason to believe that the stevedore will not remedy it. Id. at 167, 175-79. Furthermore, the Court held that "absent contract provision, positive law, or custom to the contrary...the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are

6

assigned to the stevedore." Id. at 172. The Court noted that imposing upon a shipowner a broad duty to supervise the stevedore would contradict the legislative intent of § 905(b), which was to limit the shipowner's liability. Id. at 169. Instead, a longshoreman now had to look primarily to his or her employer for compensation for injury in a workers compensation-type scheme.

First Goldsmith argues that the vessel breached its duty to intervene under § 905(b) as interpreted by Scindia.[3] Goldsmith does not allege that Swan Reefer caused or contributed to any dangerous condition occurring during DRS's stevedoring operations. Instead, he claims that Swan Reefer knew or should have known that DRS's practice of unloading with two cranes was dangerous, and should have intervened to stop it.[4] A general duty to intervene in the operational decisions of the stevedore has been rejected in this Circuit. In Derr v. Kawasaki Kisen K.K., 835 F.2d 490 (3d Cir. 1987), this Court noted that:

> Scindia compels the holding that the shipowner has no duty to supervise or inspect cargo loaded or unloaded by stevedores and therefore may not be held liable for injuries arising out [of] the stevedore's failure to perform his job properly...Even if

---

[3]In his brief, Goldsmith points only to the duty to intervene, not alleging that any ship equipment was in a defective or dangerous condition. Thus the reasoning of the recent Third Circuit opinion interpreting the "turnover duty" in Hill v. Reederei F. Laeisz, et al., 435 F.3d 404 (3d Cir. 2006) does not affect the outcome of this case.

[4]Goldsmith submitted a letter from his maritime expert Captain Hagedorn stating that "[t]he use of two gangs using ship's cranes to discharge loaded containers is a very dangerous operation[,] one the Master should not have permitted or which he should have closely supervised." App. 478-80a. Captain Hagedorn's professional opinion has no bearing on the legal duty owed by the vessel toward the stevedore and longshoremen.

> it were true that a vessel customarily observes the loading of cargo, understandable in light of its potential liability for certain damage to cargo...we agree with the district courts that such observation cannot be used to reimpose the general duty to supervise the stevedore.

Id. at 493-94. Goldsmith seeks to impose liability upon the shipowner, Swan Reefer, for breach of a general duty to supervise the stevedore operations. Such a duty is not imposed by § 905(b). Therefore his claim of negligence under the Scindia duty to intervene must fail.

Next Goldsmith argues that the time charter between Del Monte and Swan Reefer imposed a contractual obligation on Swan Reefer to supervise the DRS operations. While the Court in Scindia did hold that there is no general duty on the part of a vessel owner to supervise stevedoring operations, it also stated that this lack of duty exists only "absent contract provision, positive law, or custom to the contrary." 451 U.S. at 172. Scindia does not specifically define the type of contract that could alter the vessel's duty to longshoremen under § 905(b). In this case, however, Swan Reefer is subject to no contractual provision that would impose such a duty.

There is no contract between Swan Reefer and DRS, and no evidence that DRS or its longshoremen were intended to be the beneficiaries of the contract between Swan Reefer and Del Monte. Clause 59 of the time charter between Swan Reefer and Del Monte requires Swan Reefer to have an officer on deck during loading and discharging, to "prevent any pilferage or misconduct to the cargo and also watch, supervise and secure proper handling and/or stowing of the cargo." App. 336a. Goldsmith argues that this

8

contractual obligation of Swan Reefer puts his case within the "contract" exception mentioned in Scindia. We agree with the Ninth Circuit and the district courts in the Third Circuit that have addressed this issue and held that such a contract provision between the stevedoring company and a vessel does not impose a duty on the vessel to safeguard the longshoremen in the performance of their duties.[5]

The Ninth Circuit interpreted the contract language in Scindia to mean that "a contract between the time charterer and the shipowner does not affect the duty owed by the shipowner to the longshoremen." Carpenter v. Universal Star Shipping, S.A., 924 F.2d 1539, 1545 (9th Cir. 1991). The charter in Carpenter gave the owners "responsibility at all times for proper stowage, which must be controlled by the master," and required the "[c]harterers to load, stow, lash, secure, trim and discharge the cargo free of risks and expenses to owners." Id. The Ninth Circuit held that the clauses allocate risk between the charterer and the owner, and "do not inure to the benefit of the longshoremen," thereby failing to create a duty to intervene for the longshoremen's safety. Id. In the present case, the contract clause at issue also operates to shift responsibility for the cargo from the charterer to the owner, and appears enacted for the benefit of the cargo. Like the contract in Carpenter, Clause 59 is not part of a contract with the stevedore, and does not inure to the longshoremen's benefit.

---

[5]As the District Court correctly noted, the Fifth Circuit cases about time charters cited by Goldsmith are not on point and are not relevant to liability of the vessel under the LHWCA and Scindia.

Two district court judges within our Circuit have also held that language identical to Clause 59 did not give rise to a vessel's duty toward longshoremen. See Mullen v. Alicante Carrier Shipping Corp., 2004 U.S. Dist. LEXIS 15042 (E.D. Pa. Aug. 2, 2004) (J. Kauffman); Mankus v. Reefer, 2003 U.S. Dist. LEXIS 10263 (E.D. Pa. May 20, 2003) (J. Yohn)[6]. In Mullen, the court examined the context of the contract provision exception in Scindia, and determined that it only applies if the contract provision involves a duty to discover dangerous conditions related to stevedoring. The District Court in the instant case agreed with the reasoning of these courts that a contract between parties other than the stevedore, and not enacted for its benefit, does not expand the vessel's duty to intervene for the safety of longshoremen. Goldsmith is unable to show that the stevedore was a party to Clause 59 or that it was enacted for his benefit. We decline to find that the time charter in this case imposed any duty on Swan Reefer or Del Monte to ensure that the stevedore used safe unloading procedures, although we refrain from holding that a contract between a port operator and vessel owner could never impose such a duty.

Because there is no evidence in the record that Swan Reefer breached any duty of care to Goldsmith under § 905(b) of the LHWCA, the District Court correctly granted summary judgment in Swan Reefer's favor.

---

[6] The charter provisions discussed in both Mullen and Mankus were worded identically to Clause 59 in this case, were captioned "Attendance" like the provision in this case, and were found in contracts between the shipowner and Del Monte.

10

### III.

### Goldsmith's Claim Against Del Monte

Goldsmith also brought a negligence claim against the terminal operator Del Monte. The District Court was correct in applying federal maritime tort law to this claim, because the accident satisfied the three criteria of Grubart v. Great Lakes Dredge & Dock Co., 513 U.S. 527 (1995): (1) it occurred on navigable water, (2) it bore a "substantial relationship to traditional maritime activity", and (3) it had "a potentially disruptive impact on maritime commerce." Id. at 534. The general maritime negligence standard applicable to Goldsmith's claim against Del Monte is "the duty of exercising reasonable care under the circumstances of each case." Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 632 (1959).[7] Goldsmith is unable to demonstrate that Del Monte breached any duty of care it owed to him under the circumstances of his accident.

Goldsmith argues that by imposing time constraints on unloading operations, and by involving itself in DRS's unloading plans, Del Monte was at least partly responsible for DRS's use of the allegedly dangerous practice of using two shipboard cranes simultaneously. Goldsmith stresses on appeal that Del Monte met weekly with DRS personnel to discuss a plan of discharge, and that DRS was expected to discharge the ship within the time frame set by Del Monte. App. 250a, 253a. Testimony of Del Monte employees suggests that Del Monte had influence on DRS's operational decisions, so that

---

[7] Comparative negligence mitigates damages but does not bar recovery. Pope & Talbot v. Hawn, 346 U.S. 406, 409 (1953).

if Del Monte had not wanted DRS to use two gangs, DRS would not have been permitted to do so. App. 259a, 306a. There is unopposed testimony from DRS employees that they had used two ship-based cranes at the Del Monte terminal for years. App. 21-22b, 161a, 368a. Although presumably Del Monte permitted the use of the two cranes, if not encouraged it, there is no evidence that Del Monte considered the practice to be dangerous, or that anyone had ever complained to Del Monte about the listing to put it on notice of any danger. These facts are not enough to find that Del Monte was negligent for allowing DRS to use two cranes simultaneously when unloading cargo.[8]

Instead, the facts taken in the light most favorable to Goldsmith show that the listing that led to his accident was caused by improper timing of the cranes, something within DRS's control, not Del Monte's.[9] DRS's Ship Foreman Collins testified that the actual method and manner of getting the containers off the vessel is DRS's responsibility, and that if there were abnormal listing, it would have been his responsibility to fix it. App. 156-57a. DRS employees tried through the use of hand signals to avoid having two cranes discharge containers at the same time, thus avoiding severe listing. App. 152a.

---

[8] Goldsmith argues that the letter of Captain Hagedorn shows the use of two cranes to be highly dangerous and thus per se negligent. However, the letter of Captain Hagedorn submitted by Goldsmith addresses only what Captain Hagedorn believed to be the responsibility of the vessel and its officers, not any responsibility of Del Monte.

[9] Also, by all accounts the accident happened suddenly while Goldsmith was in a crane operator's blind spot, a situation that would not have been within Del Monte's control because Del Monte did not control the minute-to-minute operations of DRS operations on the ship.

There is no evidence that Del Monte had any involvement in the timing of the cranes that led to the listing and Goldsmith's injury.

As the District Court noted below, there is no Third Circuit precedent imposing a duty of care on the terminal operator toward third parties such as longshoremen, here employees of the stevedore DRS with no direct relationship to the terminal operator themselves. This case is easily distinguishable from the one district court case cited by Goldsmith for support, Mullen v. Del Monte Fresh Produce N.A., Inc., 2004 U.S. Dist. LEXIS 20055 (E.D. Pa. Sept. 29, 2004). In Mullen, terminal operator Del Monte was denied summary judgment in a negligence suit brought by a longshoreman because Del Monte had purchased and provided defective slings that allegedly injured the plaintiff. In Mullen, Del Monte had also received complaints about the slings. Id. at *10. In the case before us, Del Monte did not provide any equipment at fault, and was not on notice of any dangerous condition. The accident occurred on a ship owned and operated by Swan Reefer, using equipment belonging to the vessel, which was in good repair. Del Monte had received no complaints about any danger stemming from any of its acts or practices, including allowing DRS to use two cranes to discharge cargo.

Goldsmith has failed to meet his burden of proving that Del Monte, which was not an expert in stevedoring operations, had a duty to intervene in the use of an apparently widespread practice by an expert stevedore, or that any breach of that duty on the part of Del Monte caused the accident. We decline to state that a port operator never has a duty to intervene in an unsafe practice or to correct an unsafe condition. But under the

13

circumstances, there is no evidence that Del Monte failed to exercise reasonable care.

Because Goldsmith failed to produce evidence showing that Del Monte violated any duty of care it may have owed him under federal maritime law, summary judgment in Del Monte's was proper.

## IV.

## Conclusion

We will affirm the District Court's grant of summary judgment to Swan Reefer on the grounds that Goldsmith has failed to produce evidence that would support imposing a duty on Swan Reefer's part to intervene for his safety under § 905(b) of the LHWCA. We will also affirm the grant of summary judgment in favor of Del Monte because Goldsmith has failed to create a triable issue that Del Monte breached a duty of care it owed him under federal maritime law.