**Johnnie D. CLARK, Plaintiff,**

v.

**The NATIONAL SHIPPING CO. OF SAUDI ARABIA, Mideast Ship Management Ltd., and Virginia International Terminals, Inc., Defendants.**

**Civil Action No. 2:07cv599.**

United States District Court,
E.D. Virginia,
Norfolk Division.

May 12, 2008.

Jeffrey A. Breit, Esquire, Michael F. Imprevento, Esquire, Breit Dreshcer & Imprevento PC, Robert L. Mills, Esquire, Carroll A. Rutter, III, Esquire, Rutter

Mills LLP, Norfolk, VA, for Johnnie D. Clark.

Edward J. Powers, Esquire, Ethan G. Ostroff, Esquire, Vandeventer Black LLP, Norfolk, VA, for the National Shipping Company of Saudi Arabia and Mideast Ship Management Limited.

No appearance for Virginia International Terminals.

## OPINION AND ORDER

WALTER D. KELLEY, JR., District Judge.

On January 29, 2007, Plaintiff Johnnie Clark, a longshoreman employed by the stevedoring company CP & O LLC ("CP & O"), was injured while loading lumber onto the M/V SAUDI ABHA (the "Saudi") at the Newport News Marine Terminal (the "Terminal"). As Mr. Clark drove [1] down a ramp inside the vessel, he could not stop his vehicle in time to navigate a switchback. His vehicle crashed into the Saudi's bulkhead wall. The impact catapulted the lumber forward, crushing Mr. Clark's midsection and paralyzing him.

On November 14, 2007, Mr. Clark filed this negligence action in the Circuit Court of Portsmouth, Virginia against the National Shipping Co. of Saudi Arabia ("NSSA") and Mideast Ship Management Ltd. ("MSM"), the entities that own and manage the Saudi. Mr. Clark also sued Virginia International Terminals, Inc. ("VIT"), the Terminal operator. He bases his claims on the general maritime law of the United States.

On December 21, 2007, Defendants removed the action to this Court based on diversity jurisdiction. Plaintiff now moves this Court to remand the case to state court, because a forum defendant—such as VIT—cannot legally remove a case. *See*

28 U.S.C. § 1441(b). Defendants counter that VIT was fraudulently joined as a defendant, so its citizenship should be disregarded.

## Analysis

### A. Fraudulent Joinder Standard

■ In order to establish fraudulent joinder, the removing party must prove that "no cause of action is stated against the nondiverse defendant, or *in fact* no cause of action exists." *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.,* 903 F.2d 1000, 1003 (4th Cir.1990) (emphasis in original) (*quoting Lewis v. Time, Inc.,* 83 F.R.D. 455, 460 (E.D.Cal. 1979)); *see Carter v. Hitachi Koki U.S.A. Ltd.,* 445 F.Supp.2d 597, 600 (E.D.Va. 2006). Courts have interpreted the "no cause of action" standard to mean that there cannot be a "['reasonable basis' for predicting liability on the claims alleged." *Cordill v. Purdue Pharma, L.P.,* No. 1:02CV00121, 2002 WL 31474466, at *2 n. 5 (W.D.Va. Nov. 5, 2002) (Jones, J.) (*quoting In re Rezulin Prods. Liab. Litig.,* 133 F.Supp.2d 272, 280 n. 4 (S.D.N.Y.2001)); *see Myers v. Air Serv Corp.,* Civil Action No. 1:07cv911, 2008 WL 149136, at *2 (E.D.Va.2008) ("[T]he crucial question pertains to the likelihood of liability....").

■ In this case, it must be reasonably possible for Plaintiff to prove against VIT each and every element of a maritime negligence claim. Those elements are: (1) the existence of a legal duty; (2) a breach of that duty; (3) an injury; and (4) a causal connection between the breach of duty and the injury. *In re Cooper/T. Smith,* 929 F.2d 1073, 1077 (5th Cir.1991).

---

**1.** As explained by the parties at oral argument, Mr. Clark drove a "hustler," which essentially is a miniature road tractor. Attached to the hustler was a flatbed "mafi" trailer on which the lumber sat.

### B. Was VIT Fraudulently Joined?

Plaintiff alleges that VIT was negligent in failing to take several actions. The alleged omissions relate either to VIT's failure to inspect cargo loading activities or its failure to warn Plaintiff of a dangerous condition that an inspection might have revealed. Plaintiff cannot maintain any of his claims against VIT, however, because the law does not impose a duty on a terminal operator to oversee stevedoring operations.

In attempting to thrust a legal duty upon VIT where none exists, Plaintiff looks to the tariff VIT filed with the United States Maritime Administration. In that document, VIT reserved the right to "control and perform the loading, unloading, handling, recoopering, reconditioning, fumigating, weighing and sampling of all freight and cargo on [its] premises and facilities." (Docket No. 5, Ex. B at 2.) While VIT can manage loading and unloading operations if it so chooses, the mere ability to control is not a sufficient basis for maritime negligence liability. *See Goldsmith v. Swan Reefer A.S.*, 173 Fed.Appx. 983, 989 (3d Cir.2006) (affirming grant of summary judgment for terminal operator on stevedore's negligence claim, even though the defendant may have "had influence on [the stevedore's] operational decisions").

Plaintiff similarly attempts to base liability on VIT's failure to develop a cargo loading and stowage plan in conjunction with CP & O and the Saudi's owners. He claims that if VIT had implemented such a plan, the lumber would have been properly secured on the mafi trailer. Additionally, Mr. Clark contends that the Saudi listed during loading in such a manner that it steepened the slope of the internal ramp. He believes that a cargo loading and stowage plan would have prevented the Saudi from listing, thus increasing his chances of navigating the switchback.

Mr. Clark again tries to hold VIT liable for failing to regulate activities in which it took no part and over which it asserted no control. Cargo loading and stowage traditionally fall within the province of the vessel owner and the stevedore. As the United States Supreme Court explained in *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 114 S.Ct. 2057, 129 L.Ed.2d 78 (1994),

> [m]ost vessels take responsibility ... for preparing a stowage plan, which governs where each cargo will be stowed on the ship. But it is the stevedore, an independent contractor hired for its expertise in the stowage and handling of cargo, that is charged with actual implementation of the plan.

*Id.* at 103, 114 S.Ct. 2057 (internal citation omitted). No evidence in this case suggests that VIT directed any aspect of the cargo loading and stowage, and this Court will not rewrite the law to require VIT to devise a plan for activities it neither performs nor oversees.

Finally, Plaintiff claims that VIT breached its duty to inspect the hustler and the mafi trailer for mechanical problems. However, both pieces of equipment were owned by CP & O. VIT did not have a duty to inspect equipment that it did not own. *See Goldsmith*, 173 Fed.Appx. at 990; *Thames v. M/V TARAGO*, No. Civ. JFM–04–2854, 2006 WL 236786, at *2 (D.Md. Jan. 31, 2006) (granting summary judgment for terminal operator, in part because port "did not provide any of the equipment" that caused the longshoreman's injury).

### Conclusion

For the above reasons, the Court **DENIES** Plaintiff's Motion to Remand (Docket No. 4), **FINDS** that Plaintiff fraudulently joined VIT as a defendant, and **DISMISSES** VIT from this lawsuit.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**